■ Leetoyzer C. Melbourne, Respondent-Appellant, v New York Life Insurance Co., Respondent, and Insurance Medical Reporter, Inc., Appellant-Respondent, et al., Defendant. (And a Third-Party Action.) [707 NYS2d 64] —Order, Supreme Court, Bronx County (Barry Salman, J.), entered April 7, 1999 which, *inter alia*, denied the motion of defendant-appellant-respondent Insurance Medical Reporter, Inc. (IMR) for summary judgment, granted the motion of defendant-respondent New York Life Insurance Co. (New York Life) for summary judgment dismissing the complaint as against that entity, and denied plaintiff-respondent-appellant Leetoyzer C. Melbourne's request for the imposition of sanctions against IMR, unanimously modified, on the law, the first and second causes of action of the amended complaint dismissed as against IMR, and otherwise affirmed, without costs.

This action arises out of an unauthorized prostate examination performed on plaintiff in connection with his application for insurance with New York Life. IMR is a California company engaged in the business of providing underwriting information to life and health insurance companies and, in furtherance of its business, contracts with companies to conduct paramedical examinations of insurance applicants. In September 1993, IMR entered into an "Examiner Agreement" with Hudson Medic Service of New York (Hudson), through its principal, Alejandro Aguilar, to conduct paramedical examinations. The agreement was entered into on IMR's behalf by Miriam Jung, who was in charge of IMR's affiliate office in the Bronx, New York.

In June 1996, plaintiff applied for a life insurance policy with New York Life and was informed that certain medical tests were required before a policy could be issued. New York Life thereafter retained IMR and on a scheduled date, an examiner went to plaintiff's apartment and explained that he was there to perform certain procedures on behalf of New York Life. The examiner, later identified as Oscar Gomez, took blood and urine samples and tested plaintiff's blood pressure. Gomez then asked the 41-year old plaintiff if he had ever had a prostate examination and, after plaintiff responded in the negative, Gomez informed him that he needed one. Plaintiff then removed his pants, as instructed, bent over and Gomez "stuck"

something into his rectum for about 30 seconds. Gomez then smiled at plaintiff and allegedly told him "you have a nice prostate." New York Life and IMR concede that a prostate examination is not part of a paramedical examination.

In March 1997, plaintiff commenced this action against New York Life and IMR and thereafter served an amended complaint, with leave of court, which added Gomez as a defendant and interposed four causes of action sounding in, respectively, intentional tort/assault, negligence, failure to properly supervise, and negligent hiring. IMR also commenced a third-party action against Aguilar, doing business as Hudson, and Gomez, seeking indemnification and contribution, although the third-party defendants have not appeared. The IAS Court subsequently granted New York Life's motion for summary judgment on the ground that plaintiff failed to proffer any evidence refuting New York Life's assertion "that its relationship with IMR was that of an independent contractor" or establishing that New York Life was negligent when it entered into its contract with IMR. The IAS Court denied IMR's motion for summary judgment and found that issues of fact exist concerning IMR's relationship with Hudson, the extent of IMR's initial investigation into Hudson's operations, and the extent of control, if any, that IMR maintained over Hudson and the methods Hudson used in hiring and training its examiners.

As a general rule, a principal is not liable for the acts of independent contractors because, unlike the master-servant relationship, principals cannot control the manner in which independent contractors perform their work (*Chainani v Board of Educ.*, 87 NY2d 370; *Kleeman v Rheingold*, 81 NY2d 270). Control of the method and means by which work is to be performed, therefore, is a critical factor in determining whether one is an independent contractor or an employee for the purposes of tort liability (*Berger v Dykstra*, 203 AD2d 754, *lv dismissed* 84 NY2d 965), and such a determination typically involves a question of fact (*Lazo v Mak's Trading Co.*, 199 AD2d 165, 166, *affd* 84 NY2d 896; *Malamood v Kiamesha Concord*, 210 AD2d 26). However, where the evidence on the issue of control presents no conflict, the matter may properly be determined by the court as a matter of law (*Lazo v Mak's Trading Co.*, *supra*, at 166; *Crage v Kissing Bridge Ski Area*, 186 AD2d 987, 988, *lv denied* 81 NY2d 702, citing *Matter of Beach v Velzy*, 238 NY 100). Moreover, the mere retention of general supervisory powers over independent contractors cannot form a basis for the imposition of liability against the principal (*Lazo v Mak's Trading Co.*, *supra*, at 167; *Wright v Esplanade Gardens*, 150 AD2d 197, 198).

In view of the foregoing, and on the record before us, it cannot be said that New York Life exercised sufficient control over IMR, or Hudson, to raise a triable issue of fact as to whether New York Life should be held accountable for the acts of Hudson's employee. Indeed, there is no evidence that New York Life, other than requesting the examinations be done, had anything at all to do with the manner in which they were performed.

With regard to IMR, issues of fact exist regarding the nature of the relationship between IMR and Hudson as well as the circumstances under which Hudson was engaged. We note in particular the possibility that Hudson is nothing more than a shell corporation (see, Szabados v Quinn, 156 AD2d 186), as its listed address is a fifth-floor apartment in a "run-down" five-story residential building on West 141st Street which does not have an elevator. Further, the building bears no signs or indications on the mailbox or intercom system indicating Hudson's existence therein, and Hudson has no listing in the Manhattan telephone directory, although its principal, Aguilar, resides at the same address. In addition, there is no proof that Gomez was, in fact, employed by Hudson, and on the form completed after his examination of plaintiff, Gomez indicated that he was employed by IMR. Moreover, a letter of apology from IMR's chief operating officer to plaintiff's attorney states that Gomez was terminated "from our company." We also note the requirement that IMR maintain a "minimum of $1,000,000/occurrence in malpractice/ liability coverage" to insure New York Life for any negligence arising out of the paramedical examinations IMR arranged for New York Life, yet Hudson was not required to maintain any coverage to insulate IMR. Further, the agreement between IMR and Hudson was terminable at will (see, Sikes v Chevron Cos., 173 AD2d 810). IMR also referred to Jung and its affiliate office in the Bronx as independent contractors, although they provide no evidence in support of such argument and we reject it as conclusory and self-serving.

It is clear, however, that under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee when the employee acts negligently or intentionally, as long as the conduct complained of is generally foreseeable and a natural incident of the employment (Judith M. v Sisters of Charity Hosp., 93 NY2d 932, 933; Riviello v Waldron, 47 NY2d 297, 304). If an employee " 'for purposes of his own departs from the line of his duty so that for the time being his acts constitute an abandonment of his service, the master is not liable' " (Baker v Allen & Arnink Auto Renting

*Co.*, 231 NY 8, 13, quoting *Jones v Weigand*, 134 App Div 644, 645).

In the matter before us, there is no dispute that a prostate examination is not an authorized component of a paramedical examination and that Gomez was not qualified to perform it in any event. Further, Gomez was eventually charged with sexual abuse in the third degree and later pled guilty to "an attempt to commit the crime of practicing medicine without a license." Accordingly, IMR cannot be held vicariously liable for Gomez's acts as they clearly were outside the scope of his employment (*see, Judith M. v Sisters of Charity Hosp.*, *supra*; *Mataxas v North Shore Univ. Hosp.*, 211 AD2d 762).

Notwithstanding the foregoing, even if we were persuaded by IMR that Hudson could be deemed an independent contractor as a matter of law, it is settled that one common law exception to the independent contractor rule is where the employer was negligent in selecting, instructing or supervising the contractor (*Maristany v Patient Support Servs.*, 264 AD2d 302; *Goodman v 78 W. 47th St. Corp.*, 253 AD2d 384). In this matter, IMR could not produce any documentation regarding the investigation it conducted into Hudson's background, and IMR's representative, Jung, who recruited and hired Hudson, states conclusorily that she got 15 to 20 excellent references for Hudson, but could not recall the names of any of these references or produce any written memoranda regarding these conversations. Further, no affidavits were produced from any of the purported references and Jung testified that she could remember almost nothing about her interview with Hudson, including the location or description of Hudson's offices. In fact, IMR's file on Hudson contained nothing more than the agreement which the two entities executed and bears no indicia that any investigation of any kind was ever conducted. We, therefore, conclude that issues of fact exist as to whether IMR was negligent in hiring Hudson, whether such negligence was a proximate cause of plaintiff's injuries, and whether IMR could, as a result, be held liable for Hudson's negligence, even if Hudson were found to be an independent contractor.

We have considered the parties' remaining arguments and find them to be without merit. Concur—Nardelli, J. P., Ellerin, Lerner, Andrias and Friedman, JJ.