[759 NYS2d 10]

Michael Schilt, Appellant, v New York City Transit Authority et al., Respondents, et al., Defendants.

First Department, April 17, 2003

## APPEARANCES OF COUNSEL

*Robert B. Taylor* of counsel (*Rovegno & Taylor, P.C.*, attorneys), for appellant.

*Kristin M. Helmers* of counsel (*Joel H. Rosner* on the brief; *Michael A. Cardozo, Corporation Counsel of New York City*, attorney), for municipal respondents.

*Susan Penny Bernstein* of counsel, (*Linda M. Cronin* on the brief; *Cronin & Byczek, LLP*, attorneys), for James Leghart, respondent.

## OPINION OF THE COURT

NARDELLI, J.P.

In this appeal, we are asked to determine, inter alia, whether the actions of the individual defendant New York City transit police officers fall within the scope of their employment with defendant the New York City Transit Authority, and if the motion court, in answering that question in the negative, properly granted defendant's motion for summary judgment and dismissed plaintiff's claim against the Transit Authority.

Plaintiff Michael Schilt commenced this action in January 1994 by the service of a summons and verified complaint, alleging negligence on the part of defendants the New York City Transit Authority and the New York City Transit Authority Police (collectively to be referred to herein as the Transit Authority), and assault, false arrest and conversion against individual defendants William Illari, Erik Paulsen and James Leghart, the latter two of whom are Transit Authority police officers. Prior to the commencement of this action, and subsequent to the filing of a notice of claim, plaintiff appeared at a General Municipal Law § 50-h hearing, which was conducted on June 21, 1993.

Plaintiff testified that on January 27, 1993, at approximately 8:25 P.M., he was driving alone in his white 1985 Dodge Diplomat on Route 135 (the Seaford-Oyster Bay Expressway, to be referred to herein as the Expressway) in Nassau County, New

York. Plaintiff claimed that he was alone in his vehicle and proceeding southbound in the left lane when a red Chevrolet Camaro, driven by Paulsen, came up from behind him. Paulsen purportedly began to flash his high beams at plaintiff and, after traveling approximately one-half mile, Paulsen pulled alongside plaintiff's car and then cut him off. Plaintiff, who testified that he thought he was being carjacked, moved into the center lane but Paulsen repeatedly cut him off.

Plaintiff averred that while he was still in the middle lane, Paulsen once again pulled alongside him and "moved over on me," causing the vehicles to make contact. Plaintiff, who stated that at that point he "feared for his life," then made an illegal U-turn across the median at a police turnaround, at which time Paulsen displayed "what looked like a badge." Paulsen also made the U-turn and as the two vehicles now proceeded northbound on the Expressway, plaintiff testified that Paulsen "came up on my left side and forced me off the road again. As he's forcing me off the road, the passenger on the side displayed a badge, so I pulled over."

Plaintiff stated that Paulsen stopped his car approximately 20 yards in front of his vehicle, got out alone, and without saying anything or displaying a badge, punched plaintiff in the face through the open driver's side window. Paulsen then purportedly opened plaintiff's door and jumped on top of plaintiff, striking him six or seven more times. Plaintiff contended that he smelled alcohol on Paulsen's breath, who at the time was yelling "I'm gonna kill you, look what you did to my $20,000 car." Defendants Illari and Leghart pulled Paulsen out of the car and off of plaintiff, after which Paulsen then pulled plaintiff out of the car, pushed him against the side of the vehicle, and demanded his license.

Plaintiff reached into his pocket to retrieve his license, which was among several credit cards. Plaintiff maintained that one of the defendants grabbed the cards from his hand and as Paulsen wrote down plaintiff's information, he refused to provide any information or identification of his own, including whether or not he was a police officer, or what agency he worked for. Paulsen also made no effort to issue a citation or summon assistance from the Nassau County Police Department, instead threatening plaintiff that he had seven days to pay for the damage "or else." Indeed, when a Nassau County Police car approached from the southbound side of the Expressway with its emergency lights and siren activated, plaintiff testified that the defendants "jumped in [Paulsen's]

car and took off." Plaintiff then discovered that three of his credit cards were missing and he subsequently filed a complaint concerning the incident with the Nassau County Police. Plaintiff averred that $57 in unauthorized charges were made on those cards at bars the night of the incident and the following night.

Defendants, as a result of plaintiff's complaint, gave statements to the Nassau County Police during the course of the following week which were substantially similar to each other. Defendants stated that they had been in a bar for approximately two hours, during which time Paulsen maintained that he consumed two beers. Paulsen also stated that after leaving the bar, he was driving to Levittown when he approached plaintiff's car from the rear, which was weaving from side to side and repeatedly hitting its brakes. Paulsen contended that since both cars were in the left lane, he moved into the center lane, passed plaintiff, and returned to the left lane. Plaintiff then purportedly pulled alongside Paulsen again and began moving into Paulsen's lane until the vehicles made contact.

Paulsen stated that he then pulled up next to plaintiff and displayed his Transit Police badge, but that plaintiff sped off and made a U-turn across the median. Paulsen followed plaintiff, pulled up alongside him and again displayed his shield, at which time plaintiff pulled over. Paulsen alleged that he exited his car, as did plaintiff, and that as they approached each other, plaintiff attempted to punch Paulsen. Paulsen avoided the punch, and claimed he struck plaintiff and restrained him against plaintiff's car. Plaintiff, while being restrained, allegedly told Paulsen that he did not know he was a police officer, he thought he was being carjacked, and that if he had known Paulsen was a police officer, he would have stopped. Plaintiff then purportedly told Paulsen he was unemployed and did not want to pay for the damage through his insurance, so they exchanged the relevant information.

Leghart's and Illari's statements, with minor variations, reflect the statement given by Paulsen. Leghart stated that Paulsen initially pulled up behind plaintiff's car and flashed his lights indicating he wanted to pass because plaintiff was driving in the left lane. Leghart contended that Paulsen passed on the right and then returned to the left lane, after which plaintiff pulled alongside Paulsen and moved into the left lane, causing the vehicles to make contact. Illari's statement varies from Leghart's only in that Illari stated that after Paulsen flashed his lights at plaintiff, plaintiff applied his brakes and

then pulled into the center lane and when Paulsen pulled alongside, plaintiff veered into Paulsen's lane causing the accident.

The Transit Authority, in January 2001, moved for summary judgment dismissing the complaint as to the Transit Authority on the ground that the officers were not acting within the scope of their employment. Leghart cross-moved, pursuant to CPLR 3216 and 3404, to dismiss the complaint as against him due to plaintiff's failure to prosecute. Leghart also interposed opposition to the Transit Authority's motion, asserting that an issue of fact existed with regard to the scope of his employment. The motion court, in a five-line decision bereft of any analysis, granted the Transit Authority's motion, noting that the officers were acting "on their own behalf," and granted Leghart's cross motion "on the ground that nothing happened in this case from 1996 until this motion."

The doctrine of respondeat superior renders an employer vicariously liable for torts committed by an employee acting within the scope of his/her employment. "Pursuant to this doctrine, the employer may be liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment" (*Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932, 933 [1999]; *see also Riviello v Waldron*, 47 NY2d 297, 304 [1979]; *Melbourne v New York Life Ins. Co.*, 271 AD2d 296, 298 [2000]). Regardless of the manner in which the rule is phrased, however, "an employee's actions are not within the scope of employment unless the purpose in performing such actions is to further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employer's business" (*Stavitz v City of New York*, 98 AD2d 529, 531 [1984]).

The applicability of this doctrine, and the question of whether a particular act falls within the scope of the servant's employment, depends heavily on the facts and circumstances of each particular case and as a result, the determination of that question is normally left to the trier of fact (*Riviello v Waldron, supra* at 302-303; *Corson v City of New York*, 290 AD2d 408, 410 [2002]; *Sanchez v New York City Tr. Auth.*, 254 AD2d 345, 346 [1998]), although the courts have decided the issue as a matter of law when the undisputed facts provide no basis for the application of the doctrine (*see e.g. Donohue v Young*, 298 AD2d 354 [2002]; *Agostino v Pennysaver Group*, 284 AD2d 353 [2001]; *Goldberg v Sulzberger-Rolfe, Inc.*, 212

AD2d 408 [1995]; *Nicollette T. v Hospital for Joint Diseases/ Orthopaedic Inst.*, 198 AD2d 54 [1993]; *Overton v Ebert*, 180 AD2d 955 [1992], *lv denied* 80 NY2d 751 [1992]).

It is well settled that a police officer's jurisdiction is statewide and police officers are responsible for enforcing the law any time, anywhere in this state (CPL 140.10 [3]; *Alifieris v American Airlines*, 63 NY2d 370, 376-377 [1984]). A police officer's conduct, as with any employee, which "is brought on by a matter wholly personal in nature, the source of which is not job-related * * * cannot be said to fall within the scope of his employment" (*Stavitz v City of New York, supra* at 531; *see also Matter of Schenectady Police Benevolent Assn. v City of Schenectady*, 299 AD2d 717, 719 [2002]; *Davis v City of New York*, 226 AD2d 271, 272 [1996], *lv denied* 88 NY2d 815 [1996]; *Longin v Kelly*, 875 F Supp 196, 201-202 [1995]).

The following cases, arising out of summary judgment and postverdict appeals, illustrate circumstances where it was held that a police officer's conduct was wholly personal in nature and fell outside the scope of his/her employment. (*See e.g. Seymour v Gateway Prods.*, 295 AD2d 278 [2002] [an off-duty corrections officer's actions were found wholly personal in nature where he punched plaintiff in the face while inside a café and then, once outside, repeatedly pushed plaintiff, produced his shield and told plaintiff he was under arrest]; *Pekarsky v City of New York*, 240 AD2d 645 [1997], *lv denied* 91 NY2d 806 [1998] [municipality held not liable where off-duty police officer, while on vacation, was involved in a minor traffic accident with decedent and, when police officer approached decedent's vehicle, he observed decedent reach under his seat and, fearing decedent was retrieving a weapon, drew his service revolver, indicated he was a police officer and displayed his shield, which did not deter decedent from advancing on the officer with a tire iron, resulting in the officer discharging his weapon]; *Davis v City of New York*, 226 AD2d 271, *supra* [1996] [City held not liable when an off-duty corrections officer arrested plaintiff after an altercation which arose out of the officer's perception that plaintiff had cut in front of him in a line at a McDonald's restaurant]; *Weitman v City of New York*, 222 AD2d 316 [1995], *lv dismissed* 87 NY2d 1055 [1996] [City held not liable where off-duty police officer, on vacation, became involved in an altercation arising out of a traffic dispute and plaintiff was never charged with a crime by the responding Suffolk County Police]; *Stavitz v City of New York*, 98 AD2d 529, *supra* [1984] [an off-duty police officer's actions were personal in nature

when he assaulted and arrested a neighbor over a disagreement concerning their common driveway].)

■ In the matter at bar, none of the parties' accounts of the incident give any indication that plaintiff was pulled over for any reason other than to obtain personal information in order to hold him financially responsible for the damage to Paulsen's car. Indeed, the officers were apparently unconcerned about whether plaintiff was operating his vehicle, on a high-speed highway, under the influence of alcohol or some other substance, notwithstanding Paulsen's testimony that plaintiff was weaving and continuously applying his brakes, and all of the individual defendants' statements that plaintiff, at the very least, was driving erratically. Furthermore, the officers made no attempt to contact, or file a report with, the Nassau County Police or make an arrest on their own, despite the fact that plaintiff, according to defendants' accounts, attempted to assault a police officer and had to be subdued, left the scene of an accident, and committed a vast array of traffic violations.

We can only conclude from the foregoing that defendants were acting wholly in furtherance of their own personal interests in that they wanted to ensure plaintiff paid for the damage to Paulsen's car, and that defendants' brief display of their badges, without more, is simply insufficient to create a triable issue of fact as to whether they were acting within the scope of their employment (*Stavitz v City of New York, supra* at 533).

■ The motion court erred, however, when it granted Leghart's cross motion to dismiss the complaint as against him for failure to prosecute. In the first instance, CPLR 3404, upon which Leghart partially relies, is inapplicable as no note of issue has been filed in this case (*see Behren v Warren, Gorham & Lamont,* 301 AD2d 381 [2003]; *Johnson v Minskoff & Sons,* 287 AD2d 233 [2001]). Moreover, to the extent that the cross motion seeks relief pursuant to CPLR 3216, it should have been denied as premature as the statutory time period of 90 days did not elapse from the service of the written demand to resume prosecution to the filing of the motion (*see* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3216:14).

Accordingly, the order of the Supreme Court, New York County (Robert Lippmann, J.), entered June 27, 2001, which granted the Transit Authority's motion for summary judgment dismissing the complaint as against it, and granted Leghart's cross motion to dismiss the complaint as against him for fail-

ure to prosecute, should be modified, on the law and the facts, Leghart's cross motion denied and the complaint reinstated as to Leghart, and otherwise affirmed, without costs.

MAZZARELLI, SAXE and MARLOW, JJ., concur.

Order, Supreme Court, New York County, entered June 27, 2001, modified, on the law and the facts, defendant-respondent Leghart's cross motion denied and the complaint reinstated as to him, and otherwise affirmed, without costs.