■ Hector Campos, Respondent, v City of New York, Appellant. [821 NYS2d 19]—

Amended judgment, Supreme Court, New York County (Jacqueline W. Silbermann, J.; Ira Gammerman, J., at trial and on posttrial motion), entered March 15, 2004, awarding plaintiff, after a jury trial, $16,516,219 for bodily personal injuries (structured pursuant to CPLR article 50-B) and $500,000 for malicious prosecution, unanimously modified, on the law, to grant defendant's motion for judgment notwithstanding the verdict to the extent of dismissing the causes of action against the City for use of excessive force and for negligent training, the award for bodily personal injuries based on such causes of action vacated, and otherwise affirmed, without costs.

On March 29, 1995, plaintiff was shot by Ricardo Cobeo, an off-duty member of the police force of defendant City of New York (the City). After the shooting, plaintiff was arrested for robbery, based on Cobeo's claim that plaintiff had robbed him and that Cobeo had shot plaintiff while attempting to effect an arrest. The ensuing prosecution of plaintiff culminated in his acquittal. As a result of the shooting, plaintiff suffered serious personal injuries.

In this civil action, plaintiff's claim against the City for the injuries resulting from the shooting was submitted to the jury on two independent theories.[1] First, the jury was asked to consider whether the City could be held vicariously liable for the shooting (assuming it was an excessive use of force) under the doctrine of respondeat superior. Stated otherwise, the jury was asked whether the shooting was committed within the scope of Cobeo's employment as a police officer, in the course of effecting an arrest for which there was "a reasonable basis." The jury was also asked to consider whether the City could be held liable for the injuries inflicted by the shooting on the additional theory that such injuries were a result of the City's negligence in training Cobeo in the use of firearms. The jury found that the shooting was a departure from proper police practice, and that the City was liable for plaintiff's physical injuries under both the respondeat superior and negligent training theories.

A cause of action against the City for malicious prosecution was also submitted to the jury. This claim was based on the contention that Cobeo, while acting within the scope of his employment, had procured plaintiff's prosecution by, inter alia, giving false testimony before a grand jury. On this claim, as well, the jury's verdict was in favor of plaintiff.

---

1. Cobeo, who originally was also named as a defendant herein, settled with plaintiff before the case was submitted to the jury.

On its appeal from the judgment, the City does not dispute that there was sufficient evidence to support the jury's finding that the shooting was a tortious departure from proper police practice. The City does argue, however, that, as a matter of law, on the facts determined by the jury, it cannot be held liable for the shooting, either under the theory of respondeat superior or under the theory of negligent training. For the reasons discussed below, we agree with this argument, and therefore modify the judgment as indicated.

To explain the disposition of this appeal, it is necessary to recount in some detail the radically conflicting accounts of the subject incident given by plaintiff and Cobeo. Plaintiff's account, which we describe first, was of an encounter based on mistaken identity, from which plaintiff was apologetically attempting to withdraw when an irrationally infuriated Cobeo shot him in the back. According to plaintiff's testimony at the trial of this action, he was walking along Yonkers Avenue in Yonkers on the night in question when he saw a short, slightly built man walking with a woman about 15 feet ahead of him. Plaintiff believed that this man (who was actually Cobeo) was plaintiff's friend "Sachi," who owed plaintiff money on a sports bet. Without first calling out or identifying himself, plaintiff walked up behind Cobeo, patted him on the shoulder, and said, "Yo, Sachi, where my money at?" When Cobeo turned around, plaintiff realized it was not "Sachi," and apologized for the mistake. Cobeo, however, began to yell at plaintiff; meanwhile, the woman walked away. Plaintiff continued to apologize, but Cobeo (whose breath smelled of alcohol) was not placated and continued yelling. Plaintiff finally turned his back on Cobeo and walked between two cars into the roadway toward the other side of Yonkers Avenue. As Cobeo's tirade continued, plaintiff glanced back at him over his left shoulder while crossing the street. At that point, plaintiff heard a gunshot and fell down. Cobeo approached the fallen plaintiff, pointed a revolver at him, said that plaintiff "deserved to die," and frisked him, removing a folding knife from plaintiff's back pocket. Jose Roman, a male friend of plaintiff's, then arrived at the scene, and Cobeo pointed his gun at Roman and identified himself as a police officer. Plaintiff did not recall Cobeo identifying himself as a police officer at any point prior to the shooting.

In stark contrast to plaintiff's testimony, Cobeo testified, both at the trial of this action and at the prior grand jury proceeding, that the sequence of events leading to the shooting began with plaintiff's assaulting Cobeo from behind and robbing him. According to Cobeo, he was walking on Yonkers Avenue with his

wife on the night in question when a man much larger than himself (whom he had earlier seen crossing the street toward him) suddenly grabbed him in a choke hold from behind, lifted him off the ground, and jabbed a hard object into his back. The assailant said, "Give me your . . . money, don't make me hurt you." Cobeo told his wife to run away (which she did), removed his wallet from his rear pocket, and handed the wallet over his shoulder to the assailant. The assailant found no money in the wallet, and tossed it to the pavement. Cobeo then removed $15 in cash from another pocket, and handed the currency over his shoulder to the assailant. When the assailant did not release Cobeo at that point, Cobeo began to struggle. The assailant then shoved Cobeo to the sidewalk. As Cobeo picked himself off the ground, he saw two men, one larger than the other, walking away from him across Yonkers Avenue. Cobeo drew his revolver, aimed at the back of the larger man (who was plaintiff), identified himself as a police officer and instructed the men to halt and not to move. Both men stopped, facing away from Cobeo, with plaintiff on the right. Plaintiff then began to turn around rapidly to his left. Believing that plaintiff was turning around to shoot him, Cobeo shot plaintiff in the left flank. It subsequently emerged that plaintiff was not in possession of a gun, but he did surrender an unopened folding knife.

Of the two accounts set forth above, the jury believed plaintiff's, and disbelieved Cobeo's. This is evident from the jury's responses on the special verdict form the court propounded to it. One of the issues raised by the claim for malicious prosecution was whether Cobeo gave false testimony before the grand jury that indicted plaintiff on robbery charges. To enable the jury to resolve this question, the court read it an excerpt from Cobeo's grand jury testimony, in which he gave substantially the same account of the subject incident as he did at the trial of this action (i.e, the account by Cobeo summarized above). Question 7 on the special verdict form asked: "In testifying before the grand jury, did Detective Cobeo give false testimony about the events of March 29, 1995?" The jury's unanimous answer to this question was "Yes."

The response to question 7 is not the only indication that the jury disbelieved Cobeo's version of what happened in the subject incident. With regard to the City's affirmative defense of assumption of the risk, question 12 asked: "By robbing Detective Cobeo did [plaintiff] assume the risk of being injured?" The written instruction immediately preceding question 12 states: "Answer question twelve only if you find that the events of March 29, 1995, *occurred as testified to by Detective Cobeo*. If

not, omit question twelve" (emphasis added). The jury skipped question 12, thereby indicating once again that Cobeo's testimony concerning the subject incident was found not credible.

At first blush, it might appear favorable to plaintiff that the factfinder believed his testimony and disbelieved that of the man who shot him. In this case, however, it is clear that plaintiff cannot hold the City liable for his shooting-related injuries if the jury determined the facts to accord with his version of events—which, to reiterate, is precisely the determination the jury made. This is because the facts to which plaintiff testified—which is to say, the facts as found by the jury—did not, as a matter of law, give Cobeo probable cause, or even a reasonable basis, to arrest plaintiff. Again, according to plaintiff's testimony, he simply approached Cobeo from behind, patted him on the shoulder, and asked for "my money"; immediately thereafter, realizing he had mistaken Cobeo for another person (and without knowing Cobeo was a police officer), plaintiff withdrew the demand, with apologies. Even at night in a relatively dangerous neighborhood (as claimed by plaintiff), such behavior cannot, without more, reasonably be perceived as "us[ing] or threaten[ing] the immediate use of physical force" for the purpose of stealing, which is the essential element of the crime of robbery (Penal Law § 160.00).[2] The only rational conclusion to be drawn from plaintiff's testimony is that Cobeo's conduct in this incident emerged solely from extreme personal pique at plaintiff's perceived rudeness, not out of any concern to further the interests of law enforcement.

It follows from the foregoing that, as a matter of law, plaintiff cannot recover from the City for his shooting-related injuries. On the facts found by the jury, Cobeo shot plaintiff out of personal motives, not while acting within the scope of his employment, or, stated otherwise, in furtherance of the interests of his employer, which is the requirement for imposing vicarious liability on the employer under the doctrine of respondeat superior (see Riviello v Waldron, 47 NY2d 297, 302-303 [1979]). A municipality cannot be held vicariously liable for acts perpetrated by a member of its police force in the course of engaging in a personal dispute, without any genuine official purpose, whether or not the police officer characterizes such

---

**2.** While a robbery charge may be predicated on a threat of violence that is implicit rather than explicit (see People v Woods, 41 NY2d 279 [1977]; People v Read, 228 AD2d 304 [1996]; People v Bennett, 219 AD2d 570 [1995], lv denied 87 NY2d 844 [1995]), not even an implicit threat can reasonably be discerned in plaintiff's behavior in the version of events to which plaintiff testified.

conduct as an arrest or incident to an arrest (*see White v Thomas*, 12 AD3d 168 [2004]; *Schilt v New York City Tr. Auth.*, 304 AD2d 189, 195 [2003]; *Seymour v Gateway Prods.*, 295 AD2d 278 [2002]; *Cardona v Cruz*, 271 AD2d 221, 222 [2000]; *Farkas v City of New York*, 242 AD2d 597, 598 [1997]; *Davis v City of New York*, 226 AD2d 271, 272 [1996], *lv denied* 88 NY2d 815 [1996]; *Stavitz v City of New York*, 98 AD2d 529 [1984]). Further, since Cobeo's conduct was not in furtherance of police business, but was simply an extreme overreaction to plaintiff's perceived rudeness, motivated by personal pique, there is no rational basis for finding that the shooting resulted from any defect in the firearms training Cobeo received from the City (*see Cardona*, 271 AD2d at 222). Stated otherwise, it cannot rationally be said, based on the facts found by the jury, that, but for the alleged deficiencies in Cobeo's training, the shooting would not have occurred. Thus, as a matter of law, under the facts found by the jury, neither the doctrine of respondeat superior nor the theory of negligent training affords a legally sufficient basis for holding the City liable for the injuries plaintiff has suffered as a result of the shooting.

Although the jury did answer "Yes" to the question asking whether there was "a reasonable basis for Detective Cobeo to arrest [plaintiff]" this portion of the verdict cannot stand, as a matter of law. Based on the jury's other responses indicating unequivocally that they rejected Cobeo's testimony and believed plaintiff's, the finding that there was a reasonable basis for an arrest does not have legally sufficient support in the evidence credited by the jury, for the reasons we have already discussed. We note that the jury apparently was led to believe, by the testimony of plaintiff's expert on police practice, that it could find a reasonable basis for an arrest while crediting plaintiff's testimony. That expert testified, over the City's objection, that the facts to which plaintiff testified did, in the expert's opinion, give rise to probable cause for arresting plaintiff for robbery. We hold that this testimony drew an erroneous legal conclusion from the facts on which it was based, and therefore should have been excluded or stricken, as the City requested.

Plaintiff also argues that the finding of a reasonable basis for an arrest can be harmonized with the jury's responses reflecting a rejection of Cobeo's testimony if it is assumed that the jury, while generally discrediting Cobeo's testimony, believed enough of it to support a finding that grounds for an arrest were present. We cannot accept this argument, because the case was not submitted to the jury on that basis. Although the City requested that the jury be asked to make specific findings on

exactly what occurred in the subject incident, the court denied this request. Instead, the court propounded to the jury, with plaintiff's evident approval, two interrogatories (the aforementioned questions 7 and 12) that asked whether Cobeo's testimony about the subject incident was accepted or rejected in its entirety. In the case of question 7, the question referred to a specific two-page excerpt of Cobeo's grand jury testimony that was read into the record. This excerpt began with the first notice Cobeo took of plaintiff crossing Yonkers Avenue, and ended with Cobeo's identifying himself as a police officer as he picked himself off the sidewalk. The jury was asked whether this specific stretch of testimony was true or false in toto, not which parts of it were true and which parts false. Plaintiff acquiesced in submitting the case to the jury on this all-or-nothing basis, which relied on the legally erroneous premise (as previously discussed) that an arrest could be justified on plaintiff's version of the facts. This being the case, we cannot sustain the verdict in plaintiff's favor based on a supposition as to which parts of the conflicting evidence the jury may have picked and chosen to cobble together a narrative that would justify an arrest while supporting the finding of the falsity of Cobeo's testimony, as reflected in the jury's response to question 7 and nonresponse to question 12.[3]

We observe that plaintiff's case, stripped to its essentials, rests on the proposition that, in material respects, he testified falsely about the events of the night of March 29, 1995. We hesitate to sustain a verdict so premised. It is true that plaintiff seeks to avoid drawing the conclusion that he testified falsely by pointing to his expert's view that there was probable cause for an arrest even under plaintiff's account of the incident. As previously discussed, however, we find this view to be erroneous as a matter of law.

Finally, we reject the City's argument that there was insufficient evidence to support the jury's finding that Cobeo was acting within the scope of his employment when he engaged in the acts the jury found to constitute malicious prosecution, namely, providing false information about the incident to the

---

3. In any event, there does not seem to be any plausible combination of parts of plaintiff's and Cobeo's testimony that could support both the finding of a reasonable basis for an arrest while being consistent with the jury's answer to question 7 and skipping of question 12. The responses to questions 7 and 12 plainly indicate that the jury rejected Cobeo's testimony that plaintiff placed him in a choke hold from behind and demanded money. Of the two versions of plaintiff's conduct placed before the jury, this is the only one that would have provided a reasonable basis for arresting him or, subsequently, indicting him.

Yonkers police and Westchester County prosecutors, and testifying falsely before the grand jury. It is undisputed that, at the City's request, Cobeo was designated as plaintiff's arresting officer, and that Cobeo was paid by the City for all the time he spent testifying or meeting with prosecutors in furtherance of the prosecution. While Cobeo may have misled the City as to what occurred in the underlying incident, it is clear that the City believed him at the time, and that it regarded his assistance in the prosecution to be in furtherance of its own interests. Since there is sufficient evidence to support the jury's conclusion that Cobeo's aid to the prosecution was malicious and within the scope of his employment, we affirm the portion of the judgment against the City that is based on the cause of action for malicious prosecution. Concur—Friedman, J.P., Sullivan, Nardelli, Gonzalez and Sweeny, JJ.