OPINION OF THE COURT
Jack M. Battaglia, J.
On the evening of February 6, 1997, plaintiff Joseph Barton and defendant Walter Rossler were at the bar of the Second Street Café in Suffolk County. Defendant Rossler was employed by the New York City Police Department, assigned as a detective with the 67th Precinct, and was carrying his department-issued firearm. As a result of circumstances somewhat in dispute, the weapon discharged, and Mr. Barton was shot, in his face. In this action, he seeks damages for his injury.
Plaintiffs verified complaint alleges six causes of action. His first cause of action alleges negligence on the part of defendant Rossler, and his second cause of action alleges negligence on the part of Larman Enterprises, Inc., doing business as Second Street Café. In the remaining four causes of action, plaintiff alleges negligence on the part of the City of New York/New York City Police Department in the training, hiring, and retention of defendant Rossler, and the City’s vicarious liability for Rossler’s alleged negligence.
Plaintiff has moved for an order striking the City’s answer “for failing to provide necessary court-ordered discovery.” The City has “cross-moved” pursuant to CPLR 3211 (a) (7) and 3212 for dismissal of the verified complaint and a cross claim for indemnification asserted against it by defendant Rossler. Plaintiff and the City have each opposed the other’s motion. Rossler submitted opposition to plaintiffs motion only, but did not appear on the adjourned return date.
As indicated, the circumstances surrounding the discharge of defendant Rossler’s weapon are somewhat in dispute. Plaintiff testified at a hearing pursuant to General Municipal Law § 50-h that he and Rossler were at the bar at the Second Street Café when the shooting occurred. He also testified:
“I observed what I believed was a firearm at the bar, and it was being outstretched in my general direction, and it looked like it was not in a situation that was safe, and I had moved to stabilize it a little bit, and I just remember being thrown to the floor.” (Transcript of 50-h hearing at 11.)
When plaintiff saw the firearm, it was being held by Rossler. *506 (See id.) Plaintiff testified to no further recollection about the circumstances of the shooting.
Defendant Rossler’s version of the shooting is found only in an affidavit that he submitted on a prior motion. He states: “[W]hile I was off-duty, plaintiff attempted to gain possession of my Department-issued firearm causing it to discharge and strike plaintiff.” (Affidavit of Walter Rossler 1t 3.) Rossler describes no other circumstances.
The City contends that “Plaintiff’s cause of action which seeks to cast the City in damages under the doctrine of respondeat superior must be dismissed because Detective Rossler was not acting in furtherance of his employer’s interests at the time of the subject incident.” (Affirmation in support of cross motion for dismissal/summary judgment and in opposition to plaintiffs motion to strike/compel at 4-8.)
“The doctrine of respondeat superior renders an employer vicariously fable for torts committed by an employee acting within the scope of his or her employment ... An employee’s actions fall within the scope of employment where the purpose in performing such actions is ‘to further the employer’s interest, or to carry out duties incumbent upon the employee in furthering the employer’s business’ . . . Conversely, where an employee’s actions are taken for wholly personal reasons, which are not job related, his or her conduct cannot be said to fall within the scope of employment.” (Beauchamp v City of New York, 3 AD3d 465, 466 [2d Dept 2004], quoting Stavitz v City of New York, 98 AD2d 529, 531 [1st Dept 1984].)
The City offers no direct evidence on whether, at the time of the shooting, Rossler was furthering his “employer’s business” or acting for “wholly personal reasons.” The City relies on the undisputed facts that the shooting occurred while Rossler was off duty and outside the City of New York, and its interpretation of the parties’ sworn statements as “establishing] that the subject incident arose solely from a personal altercation in a bar.” (See affirmation in support and in opposition If 21.)
First, it is clear that “neither the fact that [Rossler] was off duty at the time of the shooting nor the fact that he was then beyond the geographical area of his employment is dispositive of the issue of whether he was acting within the scope of his employment.” (See Mastroianni v Incorporated Vil. of Hempstead, 166 AD2d 560, 562 [2d Dept 1990].) “It is well settled *507 that a police officer’s jurisdiction is statewide and police officers are responsible for enforcing the law any time, anywhere in this state.” (Schilt v New York City Tr. Auth., 304 AD2d 189, 194 [1st Dept 2003]; see also Campos v City of New York, 195 Misc 2d 624, 626 [Sup Ct, NY County 2003].) Although the facts that Rossler was off duty and outside the city when the shooting occurred are not determinative on the issue, they are at the least material to its determination and the City’s attempt to make a prima facie showing on this motion.
Accepting the City’s characterization of the incident at issue, the authority that is closest factually is Bell v City of New York (137 NYS2d 104 [Sup Ct, NY County 1954], affd 285 App Div 1143 [1st Dept 1955]), where a bullet from an off-duty police officer’s gun was also discharged in a barroom under circumstances that were in dispute. Although the police officer testified that he did not draw his gun, “asserting that it became dislodged from its holster as he struggled to defend himself from an attack by another patron of the bar,” the court found that the officer did draw his gun. (See 137 NYS2d at 105.) The court also found that “[t]he gun was discharged while the officer and his adversary were struggling for its control,” killing “an innocent bystander having no part in the fracas.” (See id.)
On these facts, the court saw no basis for holding the City liable for the officer’s acts: “He was not on duty; he was not acting in the capacity of a police officer; he was a patron in the bar; he got into a dispute with another patron which ripened into physical combat, resulting in the fatal occurrence.” (Id.) The court’s conclusion is consistent with many others that refuse to find the City liable when the private disputes of its law enforcement officers result in harm. (See, for example, Campos v City of New York, 32 AD3d 287, 291-292 [1st Dept 2006]; Pungello v City of New York, 18 AD3d 216, 216 [1st Dept 2005]; White v Thomas, 12 AD3d 168, 168 [1st Dept 2004]; Seymour v Gateway Prods., 295 AD2d 278, 278 [1st Dept 2002]; Johnson v City of New York, 269 AD2d 359, 359-360 [2d Dept 2000].)
The difficulty here is that, despite the City’s assertion, neither plaintiff in his section 50-h testimony nor Rossler in his affidavit states that the shooting occurred as a result of a private dispute between them or between Rossler and a third person, nor does either testify to any circumstance that would suggest that Rossler was called upon to act as a law enforcement officer. The question then on this motion for summary judgment is whether the burden of coming forward with clearer evidence of such circumstances should be on the City or on plaintiff.
*508 The court recognizes that “the determination of whether an employee’s actions fall within the scope of employment depends heavily on the facts and circumstances of the particular case.” (See Piquette v City of New York, 4 AD3d 402, 403 [2d Dept 2004].) In an action based upon off-duty police misconduct and vicarious liability, the City might not have the access to those facts and circumstances that would be available to the plaintiff. The City’s interest would not necessarily coincide with that of the officer who, as in this case, asserts rights to defense and indemnity for an act or omission “while the employee was acting within the scope of his public employment and in the discharge of his duties.” (See General Municipal Law § 50-k [2], [3].) Indeed, one would have expected opposition to the City’s motion from Rossler, who is represented by his own counsel, and assertions from him that he was so acting when his weapon discharged. One would also have expected such assertions from the injured plaintiff who, even if prevented from providing them personally because of the injury, would know of and have access to witnesses who could.
Not that the City’s position is totally without evidentiary support. There is Rossler’s affidavit, submitted on a prior motion, that fails to assert scope of employment, but that states, “while I was off-duty, plaintiff attempted to gain possession of my Department-issued firearm causing it to discharge and strike plaintiff.” (See affidavit of Walter Rossler 11 3.) Although disclaiming Rossler’s affidavit as “at best misleading and at worst, total fabrication” (see affirmation in support 11 13), plaintiff describes Rossler’s having “willfully, recklessly and negligently failed to safeguard his weapon by removing it from his holster and pointing toward plaintiff Joseph Barton’s face.” (Id. 11 3.) A Newsday article, moreover, also placed before the court by plaintiff before the City made its motion, states that Rossler was suspended “after the gun he was displaying to friends in a St. James café . . . accidently discharged, striking one of the friends in the face.” (Olivia Winslow, Cop Suspended after Pal Shot, Newsday, Feb. 8, 1997, at A15.) And in opposition to the City’s motion, plaintiff asserts that “Det. Walter Rossler clearly did not exercise his best discretion for unnecessarily drawing his weapon while drinking at a bar.” (Reply affirmation and affirmation in opposition to cross motion 1110.)
On this record, the court must conclude that the City has made a prima facie showing that it is not vicariously liable for any injury caused by the February 6, 1997 shooting, and that *509 plaintiff has failed to raise a triable issue that would preclude dismissal of his sixth cause of action.
The City also seeks dismissal of the third, fourth and fifth causes of action, alleging, respectively, negligent training, negligent hiring, and negligent retention. As a general proposition, causes of action based upon the City’s own negligence in hiring, retention, training, or supervision are viable with proof that negligence was a proximate cause of the injury. (See Saarinen v Kerr, 84 NY2d 494, 504 [1994]; Barr v County of Albany, 50 NY2d 247, 257-258 [1980]; McCrink v City of New York, 296 NY 99, 103-106 [1947]; Meistinsky v City of New York, 285 App Div 1153, 1153 [2d Dept 1955], affd 309 NY 998 [1956]; Martinetti v Town of New Hartford Police Dept., 307 AD2d 735, 737 [4th Dept 2003]; Mastroianni v Incorporated Vil. of Hempstead, 166 AD2d 560, 562 [2d Dept 1990]; Bartels v County of Westchester, 76 AD2d 517, 523 [2d Dept 1980].)
The City relies, however, on a series of decisions that appear to begin, at least as to injury caused by police officers, with Cardona v Cruz (271 AD2d 221 [1st Dept 2000]), which held that, “[a]s the [off-duty police] officer was not acting within the scope of his employment or under the City’s control, any alleged deficiency in its hiring or training procedures could not have proximately caused plaintiff’s injuries” (id. at 222). A more recent decision states that, since the officer “was acting outside the scope of his employment and was not under the City’s supervision or control, . . . any nexus between [the officer’s] employment by the City and his attempted murder of the plaintiff was severed by time, distance and [the officer’s] intervening independent actions.” (See Hoffman v City of New York, 301 AD2d 573, 574 [2d Dept 2003] [citation omitted]; see also Campos v City of New York, 32 AD3d at 292; Seymour v Gateway Prods., 295 AD2d at 278.)
In each of these cases, including Cardona v Cruz (271 AD2d 221 [2000]), the off-duty police officer intentionally shot the plaintiff (see id. at 222; Campos v City of New York, 32 AD3d at 291-292; Hoffman v City of New York, 301 AD2d at 573), or intentionally punched and repeatedly pushed the plaintiff (see Seymour v Gateway Prods., 295 AD2d at 278). All of the off-duty police officer cases, moreover, rely directly or indirectly on four other decisions, two of which involved sexual molestation of the plaintiff (see Anonymous v Dobbs Ferry Union Free School Dist., 290 AD2d 464, 464 [2d Dept 2002]; K.I. v New York City Bd. of Educ., 256 AD2d 189, 190 [1st Dept 1998]) and a third *510 which involved a doorman/bouncer who punched the plaintiff in the face during an altercation (see Lemp v Lewis, 226 AD2d 907, 907 [3d Dept 1996]); the fourth involved a shooting by an off-duty private security guard, with no details given, but which in any event does not address “nexus” or proximate cause (see McDonald v Cook, 252 AD2d 302 [3d Dept 1998]). The only other decision to dismiss a negligence claim against an employer when the employer was not vicariously hable for the employee’s acts also involved sexual molestation. (See R. v R., 37 AD3d 577 [2d Dept 2007].)
In short, none of the off-duty police officer cases relied on by the City, and none of the decisions which are cited in those cases, involved employee conduct that was not intentional. In our case, in contrast, none of the accounts of how Bossier’s gun was discharged suggests that Bossier intentionally shot plaintiff. The conclusion that Bossier was not acting within the scope of his employment at the time is not based upon a factual finding, and is not the equivalent of a finding, that Bossier purposely discharged the weapon and shot plaintiff. It is clear, therefore, that existing authority does not in turn compel the dismissal of the direct negligence claims against the City in this case. The question becomes whether dismissal is compelled by necessary implication.
The court notes, first, that in none of the cited decisions did the Appellate Division elaborate on its apparent holdings that proximate cause was absent because the “nexus” was “severed by time, distance and . . . intervening independent actions.” (“Apparent,” because none of the opinions uses both the phrase “proximate cause” and the severed-nexus formulation.) “The concept of proximate cause, or more appropriately legal cause . . . stems from policy considerations that serve to place manageable limits upon the liability that flows from negligent conduct.” (Derdiarian v Felix Contr. Corp., 51 NY2d 308, 314 [1980].) “In essence, proximate cause represents a policy decision by which it is determined how far removed an effect may be from its cause in fact for the actor nevertheless to be held legally responsible.” (Sherman v Concourse Realty Corp., 47 AD2d 134, 139 [2d Dept 1975].)
“Where the acts of a third person intervene between the defendant’s conduct and the plaintiffs injury, the causal connection is not automatically severed.” (Derdiarian v Felix Contr. Corp., 51 NY2d at 315.) “In such a case, liability turns upon whether the intervening act is a normal or foreseeable conse *511 quence of the situation created by the defendant’s negligence.” (Id.) “An intervening act may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act occurring is the very same risk which renders the actor negligent.” (Id. at 316.) Even the “criminal intervention of third parties may . . . be a ‘reasonably foreseeable’ consequence of circumstances created by the defendant”; the question is whether the “intervening, intentional act of another is itself the foreseeable harm that shapes the duty imposed.” (Bell v Board of Educ. of City of N.Y., 90 NY2d 944, 946-947 [1997], quoting Kush v City of Buffalo, 59 NY2d 26, 33 [1983].)
It is clear from Cardona v Cruz and its progeny that the Appellate Division has made the policy decision that a municipality should not be liable for an intentional shooting by its law enforcement officer outside the scope of employment, whether the theory is respondeat superior or the City’s own negligence in hiring, retention, or training. There has been no policy decision, however, that liability should not attach for the City’s own negligence when the officer’s conduct was not intentional, as appears to be the fact in this action. A finding that the officer was not acting within the scope of employment is not the equivalent of a finding that the conduct was not reasonably foreseeable and beyond the risk created by the City’s negligence.
The court must note a line of authority that “where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee’s negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention.” (See Karoon v New York City Tr. Auth., 241 AD2d 323, 324 [1st Dept 1997].) The rule has been applied in police conduct cases. (See Ashley v City of New York, 7 AD3d 742, 743 [2d Dept 2004]; Diaz v City of New York, 2006 WL 3833164, *10, 2006 US Dist LEXIS 93923, *31-32 [ED NY, Dec. 29, 2006]; Rowley v City of New York, 2005 WL 2429514, *13, 2005 US Dist LEXIS 22241, *37-38 [SD NY, Sept. 30, 2005].) The rule is not an application of the proximate cause concept, but results from the logic that “if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training.” (See Karoon v New York City Tr. Auth., 241 AD2d at 324; see also Eifert v Bush, 27 AD2d 950, 951 [2d Dept 1967], affd 22 NY2d 681 [1968].)
*512 The question is, if under the authority just described, there can be no claim for direct negligence against an employer where an employee acts negligently within the scope of employment, and if Cardona v Cruz and its progeny require that there be no claim for direct negligence when an employee acts negligently outside the scope of employment, when will a claim for direct negligence in hiring, retention, or training, clearly recognized by the Court of Appeals, ever be permitted to proceed? The conclusion must be that proximate cause does not preclude a claim for direct negligence against the City for police negligence when police negligence is reasonably foreseeable and is a risk that defines the duty of the municipality, and, of course, there is both a breach of that duty and causation in fact.
The court cannot say as a matter of law that plaintiff will not be able to establish both cause-in-fact and proximate cause on one or more of his claims of direct negligence against the City. “[F]oreseeability is generally an issue for the fact finder” (Bell v Board of Educ. of City of N.Y., 90 NY2d at 946), and on this record it cannot be said that “only one conclusion can be drawn” (see id.).
With denial of the City’s motion to dismiss the negligent hiring, retention, and training claims, one of the two bases for the City’s objection to plaintiffs disclosure demands disappears. Although plaintiffs notice of motion seeks an order striking the City’s answer “for failing to provide necessary court-ordered discovery,” the motion is based upon the City’s failure to comply with a supplemental notice for discovery and inspection served on April 29, 2005 that is not the subject of any court order. A preliminary conference order dated December 14, 2004 is included among plaintiffs papers, but the City appears to have complied. (See affirmation in support 11 8; reply affirmation and affirmation in opposition to cross motion 1t1i 9-10, exhibit B.) The court also notes that plaintiff has apparently failed to include all of the pleadings in his papers — specifically, a bill of particulars that, presumably, would elaborate on the direct negligence claims, and that his motion might be denied for that reason alone.
The City’s objection to compliance with plaintiffs supplemental notice rests primarily in Civil Rights Law § 50-a (1), which renders confidential the “personnel records . . . used to evaluate performance toward continued employment or promotion” of police officers, firefighters, and correction officers. Neither plaintiff nor the City has been particularly helpful to the court *513 in accommodating their respective interests, and that of Walter Rossler, in the face of section 50-a. Plaintiffs supplemental notice is, at best, broad and unfocused in its demands, and the City fails to describe what documents might be available and why they would be covered by the statute. Indeed, the City even failed to timely respond to the supplemental notice, as required by CPLR 3122 (a).
Records rendered confidential by section 50-a are “not subject to inspection or review without the express written consent” of the employee or “as may be mandated by lawful court order.” (See Civil Rights Law § 50-a [1].) There is a two-stage process for disclosure of covered records. First, if the person seeking access makes a “clear showing of facts sufficient to warrant the judge to request records for review” (§ 50-a [2]), the judge will order that the records “be sealed and sent directly” to the judge (§ 50-a [3]). If upon review the judge makes a finding that the records “are relevant and material in the action,” they will be made available to the person requesting them. (Id.)
Defendant Rossler has submitted an affirmation in opposition to plaintiffs motion, in which it is stated that he “do[es] not object to the production of documents ‘concerning or arising from any investigation of the incident complained of herein’.” (Rossler affirmation in opposition 11 3.) Assuming that such documents are covered by section 50-a, the court considers the affirmation to constitute the “express written consent” required by the statute. Because, however, it is not clear from the affirmation that consent to “production” is intended to include delivery to plaintiff, the documents will be ordered to be delivered to the court.
We are in the first stage of the two-stage process mandated by Civil Rights Law § 50-a for disclosure of covered personnel records. The statutory requirement that there be a “clear showing of the facts sufficient to warrant the judge to request records for review” “must be viewed liberally because, in the usual case, a party seeking discovery will, of course, not know precisely what pertinent information is within a personnel record.” (See Cox v New York City Hous. Auth., 105 AD2d 663, 664 [1st Dept 1984]; see also Green v New York City Hous. Auth., 186 AD2d 455, 455 [1st Dept 1992]; Lawrence v City of New York, 118 AD2d 758, 759 [2d Dept 1986].)
There appears to be, nonetheless, a requirement that a party seeking disclosure of confidential personnel records “offer, in good faith, ‘some factual predicate’ warranting the intrusion” *514 (see Taran v State of New York, 140 AD2d 429, 432 [2d Dept 1988]). That threshold showing cannot be made with “only conclusory allegations of negligent training and supervision,” at least when the scope of disclosure requested is as broad as it is here. (See Flores v City of New York, 207 AD2d 302, 302-303 [1st Dept 1994]; but see Cox v New York City Hous. Auth., 105 AD2d at 664; see also Pickering v State of New York, 30 AD3d 393, 394 [2d Dept 2006].) Plaintiff has made no such showing, except perhaps as to Rossler’s use of a firearm, but it is not for the court to amend plaintiffs lengthy and overbroad notice.
In the interest of efficiency, the court’s as well as the parties’, the court will defer ordering the delivery of those documents “concerning or arising from any investigation of the incident” that is the subject of this action and that Rossler consents to disclosure. (See Rossler affirmation in opposition 1t 3.) Plaintiff may serve another notice to produce pursuant to CPLR 3120 (1) that, in addition to those documents, describes other documents and record entries relating to Rossler’s use of a firearm, as well as any others for which he can provide “some factual predicate.”
Plaintiffs motion to strike the City’s answer is denied, with leave to seek disclosure in accordance with this opinion.
The City’s motion to dismiss is granted only as to the sixth cause of action in plaintiffs verified complaint, and is otherwise denied.