■ JOSE FERNANDEZ, Appellant-Respondent, v 707, INC., Respondent, and BILTMORE CONTRACTING, INC., Respondent-Appellant. [926 NYS2d 408]—

Order, Supreme Court, Bronx County (Barry Salman, J.), entered July 22, 2010, which granted defendant 707, Inc.'s motion for summary judgment dismissing the complaint as against it, unanimously affirmed, without costs. Order, same court and Justice, entered July 22, 2010, which denied defendant Biltmore Contracting, Inc.'s motion for summary judgment dismissing the complaint as against it, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed enter judgment in Biltmore's favor dismissing the complaint as against it.

707, Inc. (707) obtained a "Builder's Pavement Plan" permit from the New York City Department of Transportation, dated May 3, 2006, to rebuild the sidewalks abutting its Bruckner Boulevard property. By its agent Hagivah, 707 hired Biltmore to perform the work, instructing Biltmore to leave specified sections of the sidewalk open to accommodate tree wells. 707 also obtained a tree planting permit from the New York City Department of Parks & Recreation and hired another company to plant the trees.

Biltmore commenced work on or about August 24, 2006 and completed it on or about September 14, 2006. On October 15, 2006, plaintiff allegedly was injured when he stepped into a tree well that was not level with the sidewalk. At the time, the City had yet to sign off on the sidewalk, and no trees had been planted. Subsequently, on October 30, 2006, 707's project engineer certified that the sidewalks had been constructed in accordance with the specifications set forth in the rules and regulations of the Department of Highways.

Although Administrative Code of the City of New York § 7-210 (eff Sept. 14, 2003) imposes tort liability on property owners who fail to maintain abutting city-owned sidewalks in a reasonably safe condition, 707 cannot be held liable for plaintiff's injuries by virtue of its status as an abutting landowner because a property owner's responsibility for a sidewalk does not extend to tree wells (*see Vucetovic v Epsom Downs, Inc.*, 10 NY3d 517,

521 [2008]; *Grier v 35-63 Realty, Inc.*, 70 AD3d 772 [2010]). The motion court correctly rejected plaintiff's argument that the area where he fell was not a tree well because at the time of the accident the City had yet to "sign off" on the project and no tree had been planted. These considerations do not bear on the character of the area, which the court described as "a square or rectangular dirt area surrounded by cement designed to accommodate one or more trees." Accordingly, 707 cannot be held liable for plaintiff's injuries unless it affirmatively created the dangerous condition, negligently made repairs to the area, or caused the dangerous condition to occur through a special use of the area (*see Vucetovic*, 10 NY3d at 520).

A property owner ordinarily is not responsible for the negligence of an independent contractor retained to work upon its property, unless the work is inherently dangerous, or the owner interferes with and assumes control over the work (*see Kleeman v Rheingold*, 81 NY2d 270, 273 [1993]; *Rosenberg v Equitable Life Assur. Socy. of U.S.*, 79 NY2d 663, 668 [1992]; *Laecca v New York Univ.*, 7 AD3d 415 [2004], *lv denied* 3 NY3d 608 [2004]). On its motion for summary judgment, 707 submitted proof that it hired Biltmore to build the sidewalk and tree well. It also submitted the deposition transcript of Biltmore's president who testified that a representative of the owner gave him a layout showing where to leave the tree wells and that the president's uncle was present on a daily basis and supervised the work.

In opposition, plaintiff failed to raise a triable issue of fact whether any exception to the "independent contractor rule" applied (*see Campbell v HEI Hospitality, LLC*, 72 AD3d 860, 861 [2010]). A senior project manager for Hagivah testified at his deposition that he explained to Biltmore where to place the tree wells, and "that's it." Plaintiff did not submit any proof that would rebut this or raise an issue whether 707 controlled the method and means of Biltmore's work. That 707's architect or engineer may have drawn up the plans, or that 707 may have inspected the work, does not establish that 707 had supervisory authority (*see Haefeli v Woodrich Eng'g Co.*, 255 NY 442, 450 [1931]). "[T]he mere retention of general supervisory powers over an independent contractor cannot form a basis for the imposition of liability against the principal" (*Goodwin v Comcast Corp.*, 42 AD3d 322, 323 [2007]; *Melbourne v New York Life Ins. Co.*, 271 AD2d 296, 297 [2000]).

Biltmore made a prima facie showing of its entitlement to judgment as a matter of law by demonstrating that it owed no duty of care to plaintiff (*see Espinal v Melville Snow Contrs.*, 98

NY2d 136, 140 [2002]). Biltmore's president testified at his deposition that when Biltmore completed the work, approximately one month before the accident, the tree well was level with the sidewalk. While some of his responses suggested that he was referring to Biltmore's general custom or practice, others addressed the subject tree well. The record further indicates that 707 paid Biltmore's invoice and that its senior project manager had no problem with Biltmore's work.

In opposition, plaintiff failed to raise a triable issue of fact whether Biltmore created the alleged hazardous condition (*Espinal*, 98 NY2d at 141-142; *Peluso v ERM*, 63 AD3d 1025 [2009]). Although a contractor may be liable for an affirmative act of negligence that results in the creation of a dangerous condition upon a public street or sidewalk (*Barbitsch v City of New York*, 241 AD2d 472 [1997]), "it would be mere speculation [on the record before us] to conclude that the allegedly dangerous condition which caused the plaintiff to trip and fall was caused by any affirmative act of negligence by [Biltmore]" (*Kleeberg v City of New York*, 305 AD2d 549, 550 [2003]; *Humphreys v Veneziano*, 268 AD2d 461 [2000]). There is no evidence that Biltmore breached its contractual obligations, or that it assumed a continuing duty to return to the premises after completing its work and remedy any defects that eventually developed there (*see Horowitz v Marel Elec. Servs.*, 271 AD2d 572 [2000]; *Long v Danforth Co.*, 236 AD2d 781 [1997]). Concur—Andrias, J.P., Friedman, Catterson, Moskowitz and Román, JJ.