Gabrielli, J.
Defendant was indicted for the crime of murder (Penal Law, § 125.25) in connection with the savage beating of a two-year-old child, Shari Canal, the daughter of *465 his paramour. The child had been left alone with the defendant in the mother’s apartment for a short period of time during which the mother went to the basement laundry. Upon her return to the apartment, the lifeless body of the child was discovered and the subsequent autopsy revealed that the child had been beaten to death.
Defendant’s conviction, upon his plea of guilty, for the crime of manslaughter in the first degree (Penal Law, § 125.20, subd 1) was affirmed unanimously by the Appellate Division. In this court, he claims, as grounds for reversal of his conviction, that his plea was not knowing and voluntary and that the Trial Judge erred in not conducting a hearing regarding his application to withdraw the guilty plea. We hold the conviction to be valid.
At the conclusion of the People’s case-in-chief, some three weeks after the trial had begun, during which 16 witnesses had testified and evidence was produced via certain of defendant’s friends and acquaintances of numerous admissions made by him evidencing guilt, the defendant decided to enter a plea of guilty to the crime of manslaughter in the first degree. This was first announced by defendant’s trial counsel who stated that he, his associate counsel and the defendant had conferred and that the plea was the defendant’s expressed wish. At this point the Trial Judge fully and satisfactorily queried the defendant who stated unequivocally that it was his desire to plead guilty and that he did so voluntarily. The court recited to the defendant the circumstances of the crime to which the defendant assented without then actually or specifically admitting that he had committed the criminal act. The following colloquy occurred between the Trial Judge and the defendant:
"The Court: Under the circumstances you are pleading guilty to a lesser degree of homicide, that is, manslaughter in the first degree with the knowledge that the sentence to be imposed by the Court on your plea of guilty to manslaughter in the first degree would be considerably less than life imprisonment; you understand that, too?
"The Defendant: Yes, Your Honor.
"The Court: And this is one of the reasons that impels you, after consultation with both your lawyers to plead guilty to manslaughter in the first degree; is that so, Mr. Friedman?
"The Defendant: Yes.”
At the time of sentencing, the defendant moved to withdraw *466 his plea on the ground that he had been under the influence of sodium amytal, a "truth serum”, which had been administered to him during the course of a psychiatric examination conducted by a psychiatrist he had retained, two days prior to the entry of his plea. Defendant’s attorney stated that the defendant was ill during the evening of the examination and the following morning on the way to court. He further indicated, however, that on the next morning, the day the plea was entered, defendant appeared well to him, and that he had been advised by the examining psychiatrist that it was unlikely that the defendant would still be under the influence of the drug at the time of the plea, two days after the drug was administered. The court denied the motion to withdraw the plea after first inquiring of defendant if he wished to make any statement, to which the latter replied that he was going to prison "because people got on the stand and lied.”
The plea in this case, tendered upon the completion of the People’s case-in-chief during which strong evidence of the defendant’s guilt was presented, falls squarely within the type of plea sanctioned in North Carolina v Alford (400 US 25, 37) (see, also, People v Francabandera, 33 NY2d 429, 434). In that case, the United States Supreme Court ruled that a plea accompanied by a refusal to admit commission of a criminal act may be accepted "when * * * a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt.” A fair view of the People’s evidence demonstrates that the numerous admissions made by defendant as testified to by the People’s witnesses, as well as the uncontroverted fact that the defendant was the only person with the child at the time the fatal injuries were suffered, amounted to substantial evidénce of the defendant’s guilt of the crime of murder, thus rendering his plea to manslaughter in the first degree a rational choice among the alternatives available to him.* No facts are alleged which would support a claim that the defendant misunderstood or misapprehended the allegations against him (see People v Dixon, 29 NY2d 55; People v Serrano, 15 NY2d 304, 310; People v Shipman, 14 NY2d 883). Indeed, the Trial Judge found that the probation report and I.Q. test *467 included therein reflected that the defendant was a "fairly intelligent individual” and that the plea was entered after considerable discussion between defendant and his attorneys and family.
There remains the unsubstantiated claim by the defendant that he was under the influence of a "truth serum” at the time of the entry of the plea. We conclude that the Trial Judge conducted an adequate inquiry into this contention at the time of sentencing when defendant moved to withdraw his plea and did not abuse his discretion in failing to afford defendant a hearing on his motion (People v Nixon, 21 NY2d 338). As we indicated in People v Tinsley (35 NY2d 926, 927), "Only in the rare instance will a defendant be entitled to an evidentiary hearing; often a limited interrogation by the court will suffice. The defendant should be afforded reasonable opportunity to present his contentions and the court should be enabled to make an informed determination”. The defendant was not deprived of his opportunity to advance his claims; it was the very insufficiency of his claim that defeated his motion. Confronted with absolutely no sound basis for the defendant’s claim and the statement of his psychiatrist that it was unlikely that the drug affected him at the time of the plea, the Trial Judge properly denied the motion to withdraw the plea. This case may further be distinguished from People v Wilson (15 NY2d 634) in that, here, the defendant entered his plea, during trial after the conclusion of the People’s casein-chief (see, also, People v McClain, 32 NY2d 697; People v McKennion, 27 NY2d 671). The possibility of an uninformed or involuntary plea is greatly diminished when the defendant is apprised of the evidence against him. To be considered also is the unfairness to the People in allowing the defendant to withdraw his plea after he has had the opportunity to hear the evidence aginst him and evaluate the likelihood of conviction, and after the People have gone through the effort of a trial. We are also mindful of the possible prejudice to the People resulting from the unavailability of witnesses in the future.
We also conclude that defendant’s secondary claim, that he was deprived of the effective assistance of counsel, is wholly without merit. His attorney made factual statements in good faith in the interest of fairly presenting the grounds for defendant’s desire to withdraw his plea. Given the insufficiency of defendant’s claim, we see no impropriety in the *468 statements made by his attorney to the court (see People v Sutton, 39 AD2d 820).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

 In addition, expert medical testimony established that the extensive internal injuries, which directly resulted in the child’s death, could not have been caused by a fall from her crib.