■ LAURA HUGHES, as Executrix of PHILIP J. HUGHES, Deceased, Appellant, v NEW YORK HOSPITAL-CORNELL MEDICAL CENTER, Defendant, and GEORGE E. WANTZ, Respondent. [600 NYS2d 145] —In an action to recover damages for wrongful death and conscious pain and suffering, etc., the plaintiff appeals from so much of a judgment of the Supreme Court, Queens County (Durante, J.), dated January 29, 1991, as, upon the granting of a motion by the defendant George E. Wantz pursuant to CPLR 4401 for judgment as a matter of law, dismissed the complaint insofar as asserted against George E. Wantz.

Ordered that the judgment is modified, on the law, by reinstating the second cause of action insofar as asserted against George E. Wantz; as so modified, the judgment is affirmed insofar as appealed from, and the plaintiff is granted a new trial with respect to the second cause of action insofar as asserted against George E. Wantz, with costs to abide the event.

On December 8, 1981, the defendant George E. Wantz, a doctor, saw the plaintiff's 51-year-old husband, Philip Hughes, in his office with regard to a possible hernia operation. Among other things, Mr. Hughes, who was a heavy smoker, told Dr. Wantz that he had emphysema. On January 11, 1982, the plaintiff called Dr. Wantz's office and reported that her husband had begun to cough up blood. Through his secretary Dr. Wantz told the plaintiff that this condition would be looked into at the time of his admission to the hospital for the hernia. Mr. Hughes thereafter continued with his normal routine, working the full week prior to his admission to the hospital on January 25, 1982. Dr. Wantz operated the next day, repairing the hernia. During the course of his hospital stay, which concluded on January 28 with the discharge of Mr. Hughes from the hospital, several tests were performed, including chest X-rays and a sputum analysis. As a result of these and other tests, Mr. Hughes was ultimately diagnosed as having lung cancer, which led to a rehospitalization and his death on March 16, 1982, approximately six weeks after his initial discharge.

In her suit against Dr. Wantz, the plaintiff asserted two

causes of action. The first alleged, *inter alia,* failure to test and diagnose the lung condition. It was grounded on the allegedly unnecessary nature of the hernia surgery, and the claim that it caused Mr. Hughes needless suffering. The second cause of action alleged that the decedent was discharged prematurely from the hospital, which, with the failure to test and diagnose, resulted in a "diminishment" of Mr. Hughes life and his early demise.

At the trial, the plaintiff testified, *inter alia,* as to the active life she and her husband enjoyed. She also called as an expert witness Dr. Dino Belletti, and Dr. Wantz himself. In addition to establishing the facts discussed previously, the testimony of the two physicians indicated that coughing up blood was a sign of an abnormality in the chest. Dr. Wantz admitted that accepted medical practice required that when a patient complained of an abnormal condition, prompt diagnostic testing be done, because a delay in such testing could lead to a delay in treatment. Both agreed that this was true in the case of cancer. Dr. Wantz further testified that the type and amount of therapy depended upon the size, nature, and probable spread of the cancer that was found, and that cancers grew at different rates. There was no testimony that the hernia operation itself had had any effect on Mr. Hughes's lung cancer, although Dr. Belletti testified that going forward with this surgery was a departure from accepted medical practice given the preliminary X-ray findings and a weight loss of approximately 15 pounds. At the conclusion of the plaintiff's case, Dr. Wantz moved for judgment as a matter of law, based on the plaintiff's alleged failure to establish a prima facie case. The Supreme Court granted the motion and dismissed the action.

We modify and grant a new trial with respect to the second cause of action insofar as asserted against Dr. Wantz. To be entitled to judgment as a matter of law, Dr. Wantz had the burden of demonstrating that the plaintiff's case was deficient as a matter of law, i.e., that there was no rational process by which the jury could find for the plaintiff against the movant. In evaluating such a motion, the court must accept the plaintiff's evidence as true and grant the plaintiff the benefit of every favorable inference which may be drawn from the evidence *(see,* CPLR 4401; *Jimenez v Urban Universal Structures,* 174 AD2d 604, 605; *Windisch v Weiman,* 161 AD2d 433, 437; *Hylick v Halweil,* 112 AD2d 400). Further, in order to establish a prima facie case in a medical malpractice action, where causation is almost always a difficult issue, a plaintiff need do no more than offer sufficient evidence from which a

reasonable person might conclude " 'that it was more probable than not that the injury was caused by the defendant' " *(Sachs v Nassau County,* 151 AD2d 558, 559, quoting *Mertsaris v 73rd Corp.,* 105 AD2d 67, 83).

We agree with the Supreme Court to the extent that it dismissed the first cause of action as against Dr. Wantz. There was no evidence of any kind from which a reasonable person might infer that because of the cancer Mr. Hughes did not need a hernia operation, nor any showing that the operation itself hastened his death from lung cancer. However, we are unable to conclude, as a matter of law, that the two-week delay by Dr. Wantz in testing or referring the patient to a lung specialist was not responsible for a diminished chance of survival or death which was earlier than it might have been. Mr. Hughes died a mere six weeks after his initial discharge from the hospital. He had been able to work almost up to the date of his admission. The jury may thus have reasonably inferred from these facts that during the last few months of his life his cancer was spreading rapidly. Given this possibility, and the fact that there was no evidence indicating that starting treatment two weeks earlier would have had no effect, it is possible to conclude that a few more weeks or months of life would have been possible but for the omission. Indeed, it cannot be said with absolute certainty that Mr. Hughes would not have had a chance to survive even longer given his age and his previously active life. It is possible, of course, that one may also view his rapid demise as indicating that no matter what was done an early death was certain. However, this cannot serve as a basis for granting a motion directed to the plaintiff's prima facie case *(see, Hylick v Halweil,* 112 AD2d 400, *supra).* Accordingly, a new trial must be had with respect to the plaintiff's allegation that Dr. Wantz's decision to delay testing or referring Mr. Hughes to another physician with regard to his lung condition until the hospital admission constituted medical malpractice, and resulted in suffering and a premature death *(see, Larkin v State of New York,* 84 AD2d 438, 446; *Windisch v Weiman,* 161 AD2d 433, 437-438, *supra).* Mangano, P. J., Rosenblatt, O'Brien and Copertino, JJ., concur.