OPINION OF THE COURT
 

 Smith, J.
 

 The primary issue before us concerns the admissibility of a prior conviction for impeachment purposes when that conviction arose from entry of an
 
 Alford
 
 plea
 
 (see, North Carolina v Alford,
 
 400 US 25). Defendant also claims that certain expert testimony as to the victim’s time of death was erroneously admitted at trial. We conclude that County Court properly exercised its discretion in making the above-noted evidentiary rulings and the order of the Appellate Division should be affirmed.
 

 Defendant was indicted on three counts of murder in the second degree and one count of rape in the first degree arising from the death of a woman on July 21, 1993. The victim’s body was unclothed and badly bruised, with her belongings strewn about the area where it was found. During the trial, the prosecution presented evidence that some articles of clothing found
 
 *376
 
 at the murder scene belonged to defendant including a patterned T-shirt that was covered with the victim’s blood.
 

 The prosecution also offered expert testimony as to the victim’s estimated time of death. The People’s first expert, who personally performed the autopsy, testified that the victim was “most likely” killed some time before 2:50 a.m. The People offered a second expert who reviewed the autopsy reports and concluded “to a reasonable degree of medical certainty” that the victim died at 1:50 a.m. “plus or minus fifteen minutes.” Both experts were cross-examined by defense counsel. Defendant called his own expert witness who testified generally that time of death “would be very difficult to pinpoint exactly” but here, he thought it would be “later” than 2:00 a.m. based upon his review of the autopsy records.
 

 The precise time of death was crucial as defendant’s witnesses testified that they had seen the victim long after she had allegedly been murdered. The People were permitted to cross-examine some of these witnesses about prior arrests and convictions. One witness was cross-examined about a pending arrest warrant of which she claimed to have no knowledge. Upon leaving the stand, the witness was arrested in view of the court as noted by defense counsel on the record.
 

 The court also permitted the admission of testimony that defendant had a prior felony conviction entered in Virginia. This conviction arose from defendant’s
 
 Alford
 
 plea to the charge of attempted rape in Virginia. However, the court precluded all evidence concerning the charge or the facts underlying the conviction as overly prejudicial. At trial, defendant admitted only that he had been convicted of a prior felony for which he received a suspended sentence and was placed on probation.
 

 The People also introduced defendant’s statement taken by the police. That statement, signed by the defendant upon waiving his
 
 Miranda
 
 rights, contained the following admission: “I put my arms around her chin, my hands around her neck and we were fighting, and then she gasped and went limp.” There was also evidence given from others who testified that they had been told by defendant that he had killed the victim.
 

 At the conclusion of the jury trial, defendant was found guilty of one count of murder in the second degree. The Appellate Division affirmed his conviction and a Judge of this Court granted leave to appeal. On appeal, defendant contends that County Court erroneously permitted the introduction of certain evidence for impeachment purposes including defendant’s prior
 
 *377
 
 conviction in Virginia based on an
 
 Alford
 
 plea and a pending arrest warrant against another witness. Defendant also argues that the expert testimony proffered by the People regarding the victim’s time of death was erroneously admitted.
 

 I
 

 While a guilty plea ordinarily constitutes an admission of criminal conduct, “an express admission of guilt * * * is not a constitutional requisite to the imposition of criminal penalty”
 
 (North Carolina v Alford,
 
 400 US 25, 37,
 
 supra).
 
 The desire to enter a plea of guilty accompanied by protestations of innocence may necessitate further inquiry by a trial court to ensure that the guilty plea truly “represents a voluntary and intelligent choice among the alternative courses of action open to the defendant”
 
 (North Carolina v Alford,
 
 400 US,
 
 supra,
 
 at 31, 38, n 10;
 
 cf., People v Lopez,
 
 71 NY2d 662, 666;
 
 People v Friedman,
 
 39 NY2d 463). But such a plea may still be upheld as consistent with constitutional requirements.
 

 In
 
 North Carolina v Alford
 
 (400 US 25,
 
 supra),
 
 the Supreme Court noted that:
 

 “An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime * * * when * * * a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt”
 
 (id.,
 
 at 37).
 

 In
 
 People v Francabandera
 
 (33 NY2d 429, 435), this Court explicitly recognized that the reasoning applied in
 
 Alford
 
 was “no different” than the rule in New York. In that case, defendant was injured during a shootout with the police which left him unable to recall the entire criminal incident. Represented by counsel, defendant decided to plead guilty to reckless endangerment in the first degree. Following an inquiry, the court accepted the plea.
 

 We concluded that the plea at issue was voluntarily made notwithstanding the fact that defendant “could not honestly confess his guilt because of his amnesia”
 
 (id.,
 
 at 434). As we noted, defendant had “found himself in a position, considering the overwhelming evidence against him, where a plea to a lesser charge seemed quite the prudent course”
 
 (id.,
 
 at 434).
 
 *378
 
 Similar reasoning was employed in
 
 People v Friedman
 
 (39 NY2d 463,
 
 supra),
 
 a case in which this Court upheld defendant’s plea although defendant failed to “actually or specifically admit [ ] that he had committed the criminal act” as charged
 
 (id.,
 
 at 465).
 

 A plea in which a defendant admits guilt shares an identity with an
 
 Alford
 
 plea in that both result in convictions
 
 (see, Matter of Hopfl,
 
 48 NY2d 859, 860 [although defendant “did not admit his guilt * * * he stood convicted of a felony”]). As such, we conclude that a conviction premised upon an
 
 Alford
 
 plea may generally be used for the same purposes as any other conviction. For example, in
 
 Matter of Hopfl
 
 (48 NY2d 859,
 
 supra)
 
 we held that a felony conviction pursuant to an
 
 Alford
 
 plea could properly serve as the basis for an attorney’s disbarment. Courts have also held that a conviction under an
 
 Alford
 
 plea may be considered in a determination of predicate felon status for sentencing purposes (see,
 
 People v Geier,
 
 144 AD2d 1015).
 

 Thus, within the limits applicable to the admission of evidence concerning any other conviction (see,
 
 e.g., People v Sandoval,
 
 34 NY2d 371), a defendant may be properly cross-examined for impeachment purposes about a previous conviction regardless of the fact that it arose from an
 
 Alford
 
 plea (see,
 
 State v Simms,
 
 211 Conn 1, 4, 557 A2d 914, 916 [“transcript of * * *
 
 Alford
 
 plea was * * * admissible for the jury’s consideration as to the issue of the witness’s credibility”],
 
 cert denied
 
 493 US 843).
 

 Although County Court ruled that defendant could be cross-examined about a conviction in Virginia based upon an
 
 Alford
 
 plea, it precluded questioning into the underlying facts of the conviction if defendant took the stand. Furthermore, the court ruled that defendant could testify about why he entered the
 
 Alford
 
 plea. At trial, the court gave appropriate limiting instructions to the jury that defendant’s prior conviction was only to be considered for evaluating credibility and not as proof that he committed any of the crimes with which he was charged. Other than the fact that his prior conviction was based upon an
 
 Alford
 
 plea, defendant makes no further challenge to the court’s
 
 Sandoval
 
 ruling. Defendant’s prior conviction is, most importantly, still a conviction and may be treated as such. Accordingly, defendant’s challenge to the court’s
 
 Sandoval
 
 ruling must fail.
 

 
 *379
 
 II
 

 Defendant also challenges the admission of the expert testimony adduced by the People regarding the estimated time of death of the victim. As an initial matter, the admission of expert testimony lies within the sound discretion of the trial court and review beyond the intermediate appellate level is “generally unwarranted” in the absence of an abuse of discretion
 
 (People v Cronin,
 
 60 NY2d 430, 433). There was no abuse of discretion here.
 

 Defendant claims that the expert “invaded the province of the jury” and improperly testified about an “ultimate fact” at issue. However, “opinion testimony of an expert witness necessarily enters upon the jury’s province”
 
 (id.,
 
 at 432). Such testimony may be admissible “where the conclusions to be drawn from the facts ‘depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence’” (id.,
 
 quoting Dougherty v Milliken,
 
 163 NY 527, 533). As described by the defendant’s own expert, a conclusion as to the estimated time of death is based upon factors such as the accumulation of blood in parts of the body (“livor mortis”), the tightening of muscles due to the loss of the ATP enzyme (“rigor mortis”), and body temperature. It was an appropriate exercise of discretion to conclude that such matters are beyond the ken of the average juror and permit expert testimony as to the estimated time of death even if the conclusion is the ultimate issue of fact to be determined at trial
 
 (see, People v Cronin,
 
 60 NY2d 430,
 
 supra).
 

 Defendant further claims that no proper foundation was laid for the expert’s testimony because it was based upon hearsay evidence. However, there is no requirement that an expert have personal knowledge of the facts underlying her opinion
 
 (see,
 
 Fisch, New York Evidence § 429, at 280 [2d ed] [“expert witness may base his opinion on facts which are not within his personal knowledge”]). Rather, an expert’s opinion may rest “on facts in evidence”
 
 (People v Jones,
 
 73 NY2d 427, 430).
 

 Here, the People’s expert was qualified as a forensic pathologist and rendered her opinion based on facts in the record. The expert testified that her opinion was based upon evidence she had reviewed, such as autopsy reports and photographs, other laboratory reports and the statement of a paramedic at the scene where the victim was found. Defendant does not argue that the evidence was erroneously admitted
 
 (see, People v
 
 
 *380
 

 Nisonoff,
 
 293 NY 597 [medical examiner’s report admitted];
 
 People v Hampton,
 
 38 AD2d 772 [autopsy report admitted]). The expert could draw her conclusions from the record evidence despite the fact that she had not personally examined the corpus delicti or performed the autopsy.
 

 County Court properly exercised its discretion in concluding that such issues went to credibility and weight rather than to admissibility. Notably, the witness was subjected to rigorous cross-examination and defendant offered his own expert which essentially transformed the issue into a battle of the experts
 
 (People v Cronin, supra,
 
 60 NY2d, at 432 [“Both sides may of course cross-examine and impeach the opposition’s experts, and adduce different opinions through their own experts”]). The jury was free to adopt whichever version it found more credible.
 

 Ill
 

 Defendant also challenges the prosecution’s cross-examination of a defense witness about a pending arrest warrant. Defendant’s argument has merit. Although a witness may be impeached upon cross-examination about certain convictions or specific criminal acts bearing on credibility, we have repeatedly held that the fact of an arrest or an indictment filed incident to an arrest is “not a permitted area for impeachment”
 
 (see, People v Rodriguez,
 
 38 NY2d 95, 101;
 
 see also, People v Morrison,
 
 194 NY 175,
 
 rearg denied
 
 195 NY 116;
 
 People v Cascone,
 
 185 NY 317, 334). As early as 1909, we stated in
 
 People v
 
 Morrison:
 

 “It is well settled in this state * * * that a witness may not be impeached or discredited by showing on his cross-examination or in any other way that he has been indicted. An indictment is a mere accusation and raises no presumption of guilt. It is purely hearsay, for it is the conclusion or opinion of a body of men based on
 
 ex parte
 
 evidence. The rule applies to criminal actions as well as civil, and to all witnesses whether parties or not” (195 NY 116, 117,
 
 supra).
 

 Similar reasoning applies to the introduction of evidence concerning an arrest.
 

 On appeal, the People concede that the prosecutor’s blatant violation of this long-standing evidentiary rule was error but argue that the error was harmless. We agree. The wit
 
 *381
 
 ness testified for the defense that she had seen the victim after the estimated time of death, when defendant had long since departed the area. Yet on cross-examination, the witness admitted that she did not know the victim, that she had only been told by her companion of the time of the sighting, and that she had previously given a different version of the events to the District Attorney. Moreover, the witness’ credibility was already properly called into question through cross-examination into two prior convictions. Finally, the evidence of defendant’s guilt was overwhelming. Under such circumstances, we cannot conclude that the improper cross-examination into the pending arrest warrant mandates reversal
 
 (see, People v Crimmins,
 
 36 NY2d 230).
 

 Defendant’s remaining claims of error are either unpreserved or without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Levine, Ciparick and Wesley concur.
 

 Order affirmed.