■ PATRICK CAVLIN, Respondent, v NEW YORK MEDICAL GROUP, P. C., et al., Appellants. [730 NYS2d 337] —In an action to recover damages for wrongful death resulting from medical malpractice, the defendants appeal from a judgment of the Supreme Court, Kings County (Levine, J.), dated April 28, 2000, which, upon a jury verdict on the issue of liability finding them 100% at fault in the happening of the accident, and a jury verdict on the issue of damages finding that the plaintiff had sustained damages of $775 for past medical expenses, $7,000 for funeral expenses, $100,000 for past loss of services, $100,000 for past pain and suffering, and $230,000 for future loss of services, and that the plaintiff's son, Patrick Cavlin, Jr., had sustained damages of $1,000,000 for future loss of services, is in favor of the plaintiff and against them in the principal sum of $1,437,775.

Ordered that the judgment is modified, on the law and the facts and as an exercise of discretion, by deleting the provision thereof awarding the plaintiff $100,000 for past loss of services, $230,000 for future loss of services, and $1,000,000 for future loss of services sustained by the plaintiff's son, Patrick Cavlin, Jr., and granting a new trial with respect thereto; as so modified, the judgment is affirmed, with costs payable to the defendants, unless within 30 days after service upon him of a copy of this decision and order, the plaintiff shall serve and file in the office of the Clerk of the Supreme Court, Kings County, a written stipulation consenting to reduce the jury's verdict awarding damages for past loss of services from the sum of $100,000 to the sum of $10,000, future loss of services from the sum of $230,000 to the sum of $100,000, and future loss of services sustained by the plaintiff's son, Patrick Cavlin, Jr., from the sum of $1,000,000 to the sum of $450,000, and to the entry of an amended judgment accordingly; in the event that the

plaintiff so stipulates, then the judgment, as so reduced and amended, is affirmed, without costs or disbursements.

The decedent, a 36-year-old married woman with a two-year-old son, complained to the defendant Dr. Marvin Witt of a dry, hacking cough. Dr. Witt diagnosed the decedent with a post-viral bronchial irritation. It was established that Dr. Witt did not take a complete medical history from the decedent and also failed to take an X-ray of her chest. Dr. Witt gave the decedent a bronchodilator and told her to return in four weeks. The decedent returned four days later, complaining of the same symptoms. After another similar examination, Dr. Witt prescribed a narcotic cough syrup.

Nine days later, when the decedent's condition continued to deteriorate, her mother took her to another doctor who, among other things, performed a chest X-ray. The chest X-ray revealed a mediastinal mass which turned out to be a high-grade non-Hodgkin's lymphoma. The decedent died several days later of complications directly attributable to the lymphoma. After trial, the jury found that Dr. Witt departed from good and accepted standards of medical care by, *inter alia*, failing to elicit an adequate medical history and failing to take a chest X-ray, and that this departure proximately caused the decedent's death. The jury awarded the plaintiff damages in the principal sum of $1,437,775, and the defendants appeal from the judgment entered on this verdict.

Contrary to the defendants' assertions, the plaintiff's expert witnesses established that Dr. Witt's departures from good and accepted standards of medical care were a substantial factor in causing the decedent's death (*see, Mortensen v Memorial Hosp.,* 105 AD2d 151; *see also, Jump v Facelle,* 275 AD2d 345; *Provost v Hassam,* 256 AD2d 875). It was not necessary for the plaintiff to eliminate every other possible cause of the decedent's death (*see, Mortensen v Memorial Hosp., supra*; *Rosenberg v Schwartz,* 260 NY 162; *see also, Pasquale v Miller,* 194 AD2d 597). The plaintiff simply had to show that "it was probable that some diminution in the chance of survival had occurred" (*Jump v Facelle, supra,* at 346; *see, Mortensen v Memorial Hosp., supra*; *Provost v Hassam, supra*; *Fridovich v David,* 188 AD2d 984; *see also, Hughes v New York Hosp.-Cornell Med. Ctr.,* 195 AD2d 442). The plaintiff established a prima facie case with the testimony of two expert witnesses and this testimony created a "valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Nicastro v Park,* 113 AD2d 129, 132; *see, Cohen v Hallmark Cards,* 45

NY2d 493, 498-499). Therefore, the jury's verdict was supported by legally sufficient evidence.

Additionally, the verdict was not against the weight of the evidence. Where both sides present expert testimony in support of their respective positions, it is for the jury to decide which expert's testimony is more credible (*see, People v Miller,* 91 NY2d 372; *Coraci v Slavin,* 270 AD2d 448; *Gray v McParland,* 255 AD2d 359; *Corcoran v People's Ambulette Serv.,* 237 AD2d 402). Here, the jury's choice to give more credence to the plaintiff's expert witnesses was a fair interpretation of the evidence (*see, Nicastro v Park, supra; Delgado v Board of Educ.,* 65 AD2d 547, *affd* 48 NY2d 643; *see also, Teneriello v Travelers Cos.,* 264 AD2d 772; *Lillis v D'Souza,* 174 AD2d 976, 977; *Johnston v Joyce,* 192 AD2d 1124).

The award of damages was excessive to the extent indicated in that it deviated materially from what would be considered reasonable compensation (*see,* CPLR 5501 [c]; *Harvey v Mazal Am. Partners,* 79 NY2d 218; *Senko v Fonda,* 53 AD2d 638; *Kahl v MHZ Operating Corp.,* 270 AD2d 623; *Palmieri v Long Is. Jewish Med. Ctr.,* 221 AD2d 511; *Dunn v Moss,* 193 AD2d 983). Ritter, J. P., McGinity, Luciano and Feuerstein, JJ., concur.