■ JEFFREY SCHAUB et al., Appellants, v ROBERT B. COOPER, M.D., Respondent. [824 NYS2d 241]—

Order, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered July 22, 2005, which granted defendant's motion for summary judgment to the extent of limiting plaintiffs' claim of malpractice against him to acts or omissions occurring between January 4 and the end of June 1999, unanimously reversed, on the law, without costs, the motion denied and the cause of action reinstated with respect to malpractice alleged to have occurred after June 1999.

On December 29, 1998, decedent Sybil Schaub was treated at Mercy Medical Center for episodes of diarrhea that occurred the previous day. She was diagnosed with gastroenteritis and released with instructions to seek further care from defendant Dr. Cooper, who had treated decedent, her husband Arnold and son Jeffrey for various medical problems in the past.

On January 4, 1999, decedent, Arnold and Jeffrey visited defendant. Other than a lab report, defendant has no record of the visit. Defendant testified at his deposition that he did not take notes because decedent was uncooperative as a result of her

previously diagnosed Alzheimer's disease. Defendant further testified that he did not order tests referable to her complaints of diarrhea because Arnold did not advise him that that condition had persisted. However, Jeffrey testified at his deposition that both he and his father advised defendant in detail of decedent's gastrointestinal problems as well as her general state of health. He also testified that defendant took notes during the conversation.

There were no further follow-up visits from then until decedent's hospitalization in November 1999. However, plaintiffs' telephone records indicate 22 calls were made to defendant's office during that period. Jeffrey testified that he made those calls concerning his mother's ongoing intestinal problems and that defendant ascribed decedent's diarrhea to her diet and medications. Defendant acknowledges that during this same period, he wrote prescriptions for refills of decedent's dementia medications, but has no notes concerning those calls.

On November 19, 1999, decedent was again taken to Mercy Medical Center with complaints of diarrhea. Four days later, following her release from Mercy, decedent, accompanied by Arnold and Jeffrey, sought follow-up treatment from defendant. Although he has no progress notes from this visit, defendant recalls ordering tests related to the complaints of diarrhea.

Another visit with defendant occurred on January 5, 2000. Further tests were ordered, which revealed blood in decedent's stool as well as anemia. Defendant performed a colonoscopy on decedent on January 27, and removed a polyp. Although there was initial improvement, decedent's condition continued to deteriorate. Jeffrey testified at his deposition that shortly after the colonoscopy, he decided to seek the advice of another doctor.

In March 2000, Jeffrey contacted Dr. Wolf-Klein, who examined decedent and recommended that she undergo an upper gastrointestinal imaging series to determine the cause of her problems. This test was ordered through defendant and was conducted on April 11, 2000. The test results were sent to both defendant and Dr. Wolf-Klein, and revealed a large mass in decedent's stomach. The concern at that point was whether the mass has spread beyond the confines of her stomach.

Jeffrey testified that he contacted defendant to schedule an appointment for treatment of the mass. When Dr. Cooper advised him that he could not see decedent for a few weeks, Jeffrey made an appointment to seek treatment at Memorial Sloan Kettering Cancer Center where, on April 17, 2000, decedent was diagnosed with metastatic gastric cancer.

Defendant moved for summary judgment on the grounds,

inter alia, that he did not depart from accepted standards of care. In support, he submitted the affirmation of Dr. Simmy Bank, a gastroenterologist, who opined that "there is no proximate cause between the injury alleged and the allegedly delayed diagnosis of gastric cancer based on a failure to work-up Mrs. Schaub as claimed herein. CT scans of Mrs. Schaub performed at Memorial Sloan Kettering on April 17, 2000 evidence advanced disease based on findings of multiple metastatic lesions in the liver. It was determined that the condition was inoperable."

In opposition, plaintiffs submitted two expert affirmations. A gastroenterology specialist stated that defendant departed from acceptable medical standards by failing, inter alia, to order certain tests on decedent, particularly during the period from January through June 1999. He further opined that due to those departures, "there was a significant delay in the timely and proper diagnosis of Sybil Schaub'[s] cancer. Said departures and delay significantly reduced Sybil Schaub's life expectancy and chances for a cure."

Plaintiffs' oncology specialist affirmed that based upon the symptoms presented and her prior medical history, decedent suffered from gastric cancer during the period January to June 1999. The cancer was diagnosable with proper testing and evaluation during this period and would be classified as stage IA cancer, as it had not, at that point, spread to her liver. If properly diagnosed at this point, this expert estimated that decedent "had a 78% five year survival rate." The oncologist went on to state that "when the cancer was finally diagnosed on April 17, 2000 at Memorial Sloan Kettering Cancer Center her cancer was allowed to progress to stage IV, at which time she had a 7% five year survival rate." The delay in diagnosis "not only reduced her life expectancy, but also deprived Sybil Schaub of a significant likelihood of a cure and alternatives for treatment." By the time the cancer was diagnosed in 2000, it was not amenable to surgical intervention, which, according to the oncologist, "was not the case from January 1999 through June 1999." He concluded that had decedent's "gastric cancer been diagnosed by June 1999 it would have been more probable than not that she would have a[n] extended life expectancy, had greater alternatives of treatment and a greater possibility of a cure."

The IAS court concluded that plaintiffs' oncology expert did not establish a causal link between defendant's negligence after June 1999 and decedent's injuries. Defendant's motion was granted "to the extent that the claims against Dr. Cooper are limited to the time period from January 4, 1999 through the end of June 1999."

Defendant, as movant, bore the initial burden of establishing his entitlement to judgment as a matter of law (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). In our view, he did not meet this burden.

Plaintiffs' experts both concluded that the negligent failure to diagnose the disease in the period between January and June 1999 was a substantial factor in shortening decedent's life. Defendant's expert essentially glosses over the fact that decedent's son called defendant repeatedly during 1999, reporting his mother's repeated episodes of diarrhea, weight loss and similar complaints. It was not until November 1999, after a second emergency room visit that defendant ordered the series of tests and treatment that ultimately led to the discovery of her gastric cancer by another medical provider.

Defendant did not contend, in his motion, that decedent's cancer was incurable after June 1999, nor did plaintiff's oncologist concede that point. Rather, the oncologist opined that decedent's chance of survival had dropped to 7% by the time the cancer was diagnosed in April 2000, and that the delay in such diagnosis had reduced her life expectancy. There is certainly a question of fact with respect to this issue.

We cannot conclude, therefore, as a matter of law, that the delay in testing or referring the decedent to a specialist "was not responsible for a diminished chance of survival or death which was earlier than it might have been" (*Hughes v New York Hosp.-Cornell Med. Ctr.*, 195 AD2d 442, 444 [1993]). The motion should thus have been denied. Concur—Buckley, P.J., Mazzarelli, Williams, Gonzalez and Sweeny, JJ.