Order of disposition, Family Court, New York County (Susan R. Larabee, J.), entered on or about November 12, 2010, which adjudicated appellant a juvenile delinquent upon a fact-finding determination that he committed acts that, if committed by an adult, would constitute the crimes of sexual abuse in the first and third degrees, and placed him on probation for a period of 18 months, unanimously reversed, on the law, without costs, the order vacated, and the matter remitted to Family Court for new suppression and fact-finding hearings and determinations.
The presentment agency charged appellant, then 13 years old, with acts that, if committed by an adult, would constitute the crimes of sexual abuse in the first and third degrees. In addition to the sworn deposition of the mother of the five-year-old victim, the petition was supported by the deposition of Detective Robert Arbusio. Arbusio testified that appellant gave a statement in which he admitted that he was in a room at his grandmother’s house playing video games with the victim and that he and the victim engaged in a séx act.
Appellant moved to suppress the statement. At the suppression hearing, Arbusio testified that after speaking with the victim and his mother, he called appellant’s mother and arranged for her to bring appellant to the station house for an interview. He informed her that appellant would be arrested after the interview for sexually abusing the victim. Arbusio further testified that when appellant and his parents arrived, the parents told him that appellant was in the seventh grade, in special education because of a “learning problem,” and that he did not take medication. Arbusio recalled that he asked the parents if appellant would understand him, and they said that he would.
Arbusio testified that before he began his questioning of appellant, he read him and his mother Miranda warnings. He said he used a sheet designed for juveniles, with more simple terminology and additional explanatory phrases. He told appellant and his mother that they each had to respond to him independently and had to tell him if they had any questions. He *415 testified that after each warning appellant and his mother individually confirmed that they understood and that neither had any questions.
First, the detective said that he told appellant that he had the right to remain silent, which meant that he did not have to say anything. Next, Arbusio testified, he said that anything appellant said “can and will be used against you in a court of law. That means what you say or write can be used to prove what you may have done.” Detective Arbusio further told appellant and his mother that appellant had the right to talk to a lawyer, which meant “that a lawyer can be with you at all times” and may “tell you what the lawyer wants you to do or say”; and that if he wanted a lawyer and could not afford one, “the cost of having a lawyer will be paid by someone else if you cannot afford to pay for it.”
Finally, Arbusio testified, he told appellant and his mother that they could refuse to answer any or all questions at any time or choose to have a lawyer during further questioning, adding, “Do you understand that I have to stop talking to you at any time you want to wait for a lawyer?,” to which appellant and his mother each answered yes. Arbusio stated that he read to appellant and his mother the concluding paragraph of the juvenile Miranda sheet, which stated, “I have been given my rights as read to me, I understand each of them. I have been asked if I have any questions and I do not have any. I am right now willing to give a statement and to answer questions and to give up my right to have a lawyer present.” The paragraph also confirmed that no promises or threats had been made and that appellant understood that he could change his mind at any time.
Arbusio stated that appellant appeared a little nervous as he read him the warnings, but was listening and seemed to understand, because he answered all of the questions. Arbusio further recalled that neither appellant nor his mother ever indicated that they did not understand and that appellant’s mother did not ask the detective to explain anything in more detail for appellant. After appellant and his mother signed the Miranda sheet, Arbusio stated, he told appellant that he wanted to talk about what happened at his grandmother’s house. Appellant, preferring to speak, rather than write, his statement, said that he engaged in “a sexual act” with the victim that was initiated by the victim.
Arbusio testified that he directed his questions directly to appellant, although appellant’s mother appeared to be following the conversation and was crying and upset. The mother did not ask any questions. Arbusio stated that he had explained to her *416 that he would be directing his questions to appellant and that he had directed her not to answer or help during the questioning. However, he stated that he never told the mother that she could not talk to her son at all during the interview.
Appellant’s mother testified that her son was in the seventh grade and had been diagnosed with attention deficit hyperactivity disorder (ADHD). After having had to repeat kindergarten, he had progressed each year to the next grade. According to his mother, appellant had difficulty understanding tasks at home and homework assignments. Every day, she stated, she had to explain to him how to put on his school uniform and take a shower, drawing a picture of a boy to “show him where to wash well.” She stated that sometimes when she asked him to shower or get dressed, he appeared to be completely unfocussed. Further, when she explained something to her son, he was unable to accurately repeat the explanation to her.
Regarding the interview with Arbusio, appellant’s mother testified that Arbusio did not ask her if she understood the rights as he was reading them to appellant, and in fact never spoke to her directly or asked her any questions at all. She stated that because he answered the detective with “okay” instead of “yes,” she knew that appellant had not understood his rights. However, she was not concerned that appellant had not understood the detective’s questions to him about the incident itself.
Appellant called Dr. Matías Verna, his treating psychiatrist. After testifying that he had been board-certified in psychiatry about one year, had maintained a case load of at least 40 cases in general child and adolescent psychiatry, and had been a practitioner and supervisor at Columbia-Presbyterian Hospital in general child and adolescent psychiatry for 14 months, the court qualified him as an expert. During voir dire by counsel for the presentment agency, Dr. Verna was asked whether he had experience in evaluating children and adolescents for competency in waiving Miranda rights, and whether he had ever used a so-called ‘Miranda competency test.” He responded in the negative to each of those questions.
Dr. Verna testified that appellant had been referred to him for an evaluation and needs assessment and to determine if medication would be appropriate for appellant’s symptoms of inattentiveness, impulsivity and hyperactivity. He saw appellant 10 to 12 times. Dr. Verna stated that he confirmed appellant’s pediatrician’s diagnosis of ADHD, “combined type,” which is a learning disorder, and preliminarily confirmed a diagnosis of mixed expressive receptive language disorder. He also diagnosed *417 an “adjustment disorder with mixed disturbance of emotions and conduct,” with “extreme reactions to seemingly small stressors.”
Dr. Verna testified that he observed some attentional difficulties in his meetings with appellant. For example, he had to ask questions of appellant in very straightforward sentences to elicit a meaningful answer. He further explained that appellant’s impaired ability to process received language made it difficult for appellant to follow the logical links in complex sentences. In particular, Dr. Verna opined that questions with conditionals or double negatives, or that required attention to be applied throughout the question, would become difficult. He also said that straightforward questions without conditionals or double negatives tended to be far more comprehensible for appellant. Dr. Verna further stated that appellant’s IQ was just 63 when he was 11 years old and that his language processing skills were equivalent to a person who was 6V2 years old. Dr. Verna diagnosed mild mental retardation, and opined that appellant’s low IQ had likely contributed to his learning difficulties.
Appellant’s counsel asked Dr. Verna to render an opinion as to whether appellant could have understood the juvenile Miranda warnings read to him. However, the presentment agency objected, based on the fact that Dr. Verna did not perform any tests on appellant that were specifically designed to determine appellant’s competency to waive Miranda. The court sustained the objection. Before the court issued its suppression ruling, appellant moved in writing for leave to reargue the ruling on the objection, and sought to recall the doctor to render an expert opinion concerning whether appellant was able to understand juvenile Miranda warnings in light of his receptive language delay. Appellant also made an offer of proof that Dr. Verna would, if permitted, testify that appellant was unable to understand the Miranda warnings issued by Arbusio.
The court again sustained the objection on the procedural ground that no prior motion had been decided, and further stated that “Dr. Verna was qualified as an expert in psychiatry. He testified extensively concerning respondent’s psychiatric condition, including his aptitudes and deficits. Dr. Verna also testified concerning his personal experience of respondent’s communication skills. Dr. Verna admitted that he has not concluded any testing of respondent that would have direct bearing on respondent’s capacity to waive his Miranda rights. As such, the Court agrees with the Presentment Agency that any testimony proffered by this witness on this subject would be entirely speculative.”
*418 Notwithstanding the court’s refusal to allow his expert to opine directly on appellant’s ability to comprehend the Miranda warning, appellant argued that the evidence nevertheless demonstrated that the severity of his cognitive and developmental delays prevented him from understanding his rights. Additionally, he contended that his statement was not knowing, intelligent and voluntary, because Arbusio deprived him of the parental guidance to which he was entitled by leading his mother to believe that she could not participate during the questioning. The presentment agency responded that suppression should be denied because appellant’s statement was made voluntarily, knowingly and intelligently, in his mother’s presence. The agency maintained that appellant failed to meet his burden of proving that he lacked the mental capacity to waive his rights.
The court denied the suppression motion. It found that appellant and his mother understood the Miranda warnings, that appellant understood the questions asked of him, and answered appropriately, suggesting that his language skills were sufficient for him to have understood the warnings. Therefore, the court determined that appellant understood that he did not have to speak to the police, that any statements might be used to his disadvantage, and that an attorney’s assistance would be provided, upon request, at any time and before the questioning continued. Accordingly, the court concluded that, under the totality of the circumstances, appellant’s statement was voluntarily made after he and his mother knowingly and intelligently waived his Miranda rights.
The admissibility and bounds of expert testimony are addressed primarily to the sound discretion of the trial court. “It is for the trial court in the first instance to determine when jurors are able to draw conclusions from the evidence based on their day-to-day experience, their common observation and their knowledge, and when they would be benefitted by the specialized knowledge of an expert witness” (see People v Cronin, 60 NY2d 430, 433 [1983]). The court must exercise its discretion in determining whether to admit an expert’s opinion, even where it pertains to the “ultimate question” for the factfinder (id.). Here, the issue is not whether the proffered testimony by Dr. Verna was within the ken of the ordinary finder of fact, but whether the doctor was competent to offer it. Again, the agency contends that he was not, because he never tested appellant’s specific ability to comprehend Miranda warnings.
A situation analogous to the facts here is presented in People v Miller (91 NY2d 372 [1998]). In that case, the defendant *419 argued that the People’s expert on forensic pathology should not have been permitted to opine on the time of the victim’s death, because she had only reviewed records such as an autopsy report, photographs and the statement of a paramedic who responded to the scene of the subject homicide. The Court of Appeals held that the expert’s testimony was not speculative, even though the expert had not actually performed the autopsy, because “[t]he expert could draw her conclusions from the record evidence despite the fact that she had not personally examined the corpus delicti” (91 NY2d at 380). Here, just as the expert in Miller did not herself perform the autopsy, Dr. Verna did not perform tests that the presentment agency argues would have specifically addressed the theory he intended to advance from the witness stand. Nevertheless, as in Miller, the evidence before him, such as his evaluations of appellant’s receptive communication skills and IQ, was sufficient to enable him to form an opinion as to the ultimate question of whether appellant had adequate language and cognitive skills to understand the Miranda warnings.
It is noted that People v Casiano (40 AD3d 528 [2007], lv denied 9 NY3d 990 [2007]), on which the presentment agency relies, is devoid of any indication of the nature of the expert’s testimony, which this Court rejected. Here, by contrast, Dr. Verna’s testimony was unquestionably rooted in his scientific training. It is further noted that the presentment agency did not offer any expert testimony of its own to establish that the so-called “Miranda competency test” was the only conclusive diagnostic tool for determining a person’s inability to appreciate the warnings and that such a determination could never be conclusively established through evidence of general language deficits.
In this case, any deficiencies in Dr. Verna’s testing of appellant’s specific ability to comprehend the Miranda warnings went only to the weight of the testimony, rather than to its admissibility. Thus, the court abused its discretion in not permitting it. Moreover, the uncontested testimony before the court established that appellant was at least somewhat mentally retarded, was less than half his chronological age in terms of his mental functioning, and suffered from significant processing delays. Further, his mother, who was present when the warnings were administered, and described his difficulties in following basic directions and understanding simple explanations, testified that appellant did not appear to understand them. Accordingly, the circumstances were such that an opinion by Dr. Verna regarding appellant’s ability to appreciate the Miranda *420 warnings would have been particularly relevant. Concur — Mazzarelli, J.P., Saxe, Moskowitz, Renwick and Freedman, JJ.