DeGrasse, J.,
dissents in a memorandum as follows: As the majority states, defendants Bronx-Lebanon Hospital Center and Mary Reed, M.D., its Chief of Oncology, made a prima facie showing that their conceded delay in informing plaintiff of diagnostic testing results was not a proximate cause of the injuries plaintiff alleges. I respectfully dissent, however, and would affirm the order granting summary judgment because, contrary to the majority’s conclusion, plaintiffs opposition is insufficient to raise a triable factual issue regarding proximate cause.
*443 Plaintiff’s attorney-verified bill of particulars states that defendants’ six-month delay in informing her of the results of an April 30, 2007 PET scan caused her to suffer “[s]pread, advancement and metastasis of breast and lung cancer; spread of lung cancer to liver and other parts of body requiring surgery; physical and emotional pain and suffering; loss of enjoyment of life; depression; fear of dying; loss chance of cure.”
Plaintiff began treating with defendants in January 2007. At that time, plaintiff had a history of stage IIB cancer of the right breast which was diagnosed in November 2001. Plaintiffs treatment for the disease by nonparty Montefiore Hospital Center consisted of a lumpectomy, radiation and chemotherapy that was administered in 2002. Plaintiff was also put on a regimen of Tamoxifen which she discontinued after one year due to its side effects.
The report of the April 30, 2007 PET scan recites an impression of “intense activity in right axillary and, supraclavicular lymph nodes highly suspicious for metastatic disease” and called for a correlation of these findings with a biopsy. Plaintiff was not informed of this PET scan report until October 29, 2007. The record contains the report of a subsequent November 5, 2007 PET scan which the examining radiologists compared with the April 2007 report. The findings, set forth in the November 2007 report, that are relevant to this appeal are of “mild activity in a 2 cm left lung apical density which is slightly larger and more intense” and “mild activity in the left hilum[1] that may be inflammatory.” On the basis of the two PET scan reports, defendants’ oncology expert opined that defendants’ delayed reporting of the April 2007 results did not deprive plaintiff of any opportunity for treatment because the cancer had already spread to her left lung as of the April 30, 2007 study. For example, defendants’ expert construed the November report’s use of the phrases, “slightly larger” and “more intense” as unequivocal concessions that the subject left lung apical density was visible on both the April and November 2007 studies. Defendants have demonstrated the absence of a nexus between their negligence and the injuries plaintiff claims (see Ferrara v South Shore Orthopedic Assoc., 178 AD2d 364 [1st Dept 1991]). Notwithstanding the majority’s view, the conclusions reached by defendants’ expert were not undermined by his omission of statistical or empirical data. As this Court has cautioned, “proximate cause is a legal concept which cannot be dissected *444 and measured in terms of percentages” (King v St. Barnabas Hosp., 87 AD3d 238, 245 [1st Dept 2011] [internal quotation marks and citations omitted]). Accordingly, as noted above, defendants made a prima facie showing of their entitlement to summary judgment and thereby shifted the burden to plaintiff to come forward with evidence sufficient to raise a triable issue of fact.
In opposing the motion, plaintiff submitted the affirmation of her own oncology expert who concluded that “[t]he delay in diagnosis was a substantial factor in the patient requiring additional surgery due to the spread into the lung” (emphasis added). This conclusion is unsupported by the record in two respects. First, the involvement of plaintiffs left lung was not a new development as it was already noted in the April 2007 study insofar as it spoke of “focal left hilar[2] activity in a region measuring approximately 1 cm.” In fact, the November 2007 study describes the mild activity in the left hilum as “unchanged.”[3] Second, this record does not contain an operative report, pathology report or any other document that sets forth the description, scope or even the date of plaintiffs surgery. Therefore, in my view, there exists no basis for the expert’s assertion that with an appropriate diagnosis, plaintiff “would have likely been able to avoid surgery on her lung.” It is settled that opinion evidence must be based on facts in the record or personally known to the witness (Cassano v Hagstrom, 5 NY2d 643, 646 [1959]). Moreover, the expert’s assertion that plaintiff suffered emotionally is similarly lacking foundation in the record.
Plaintiff cites Schaub v Cooper (34 AD3d 268 [1st Dept 2006]) in support of her argument that there is an issue of fact as to whether an earlier disclosure of the April 2007 study would have affected her life expectancy and chance of survival. Schaub involved a defense motion for summary judgment in a case where a delayed diagnosis allegedly allowed a decedent’s stage IA gastric cancer to progress to stage IV which had a significantly lower survival rate {id. at 270). Schaub is distinguishable insofar as we found an issue of fact as to whether the delayed diagnosis reduced the decedent’s life expectancy on the basis of expert opinion regarding the progression of the disease from stage IA to stage IV {id. at 270-271). Here, by contrast, Dr. Reed’s deposition is uncontradicted insofar as she testified that *445 plaintiff’s cancer remains at stage IIB where it was when plaintiff first came under defendants’ care.

. The hilum is a wedge-shaped depression on the mediastinal surface of each lung where the bronchus, blood vessels, nerves and lymphatics enter and leave the viseus (Stedman’s Medical Dictionary 889-890 [28th ed 2006]).

. Pertaining to a hilum (Stedman’s Medical Dictionary at 889).

. Plaintiffs expert hedges on this point by stating that the left lung apical density was not previously “significantly reported” on the report of April 30, 2007.