Matter of Krug v City of Buffalo (2018 NY Slip Op 04118)





Matter of Krug v City of Buffalo


2018 NY Slip Op 04118


Decided on June 8, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 8, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, DEJOSEPH, NEMOYER, AND WINSLOW, JJ.


67 CA 17-01399

[*1]IN THE MATTER OF COREY KRUG, PETITIONER-RESPONDENT,
v
CITY OF BUFFALO, RESPONDENT-APPELLANT. 






TIMOTHY A. BALL, CORPORATION COUNSEL, BUFFALO (DAVID M. LEE OF COUNSEL), FOR RESPONDENT-APPELLANT. 
CREIGHTON, JOHNSEN & GIROUX, BUFFALO (IAN HAYES OF COUNSEL), FOR PETITIONER-RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Erie County (James H. Dillon, J.), entered April 19, 2017 in a proceeding pursuant to CPLR article 78. The judgment granted the petition in part. 
It is hereby ORDERED that the judgment so appealed from is affirmed without costs.
Memorandum: Petitioner, a police officer employed by respondent, City of Buffalo, commenced this proceeding pursuant to CPLR article 78 to challenge respondent's determination denying his request that respondent defend and indemnify him in a civil action. The civil action arose from an incident in which petitioner was on patrol and allegedly attacked and assaulted a civilian complainant in violation of the complainant's constitutional rights. Petitioner was indicted in connection with that incident, and the complainant thereafter commenced the civil action. Supreme Court determined that petitioner's request for indemnification was premature, and the court granted that part of the petition seeking to annul respondent's denial of petitioner's request to be defended on the ground that the determination with respect thereto was arbitrary and capricious. Respondent appeals, and we affirm.
We reject respondent's contention that its determination was not arbitrary and capricious. Respondent has a duty to provide a defense to petitioner "if his alleged conduct occurred or allegedly occurred while he was acting within the scope of his public employment or duties" (Matter of Riehle v County of Cattaraugus, 17 AD3d 1029, 1029 [4th Dept 2005]; see Buffalo City Code §§ 35-28, 35-29), and the determination that petitioner was not acting within the scope of his public employment or duties "may be set aside only if it lacks a factual basis, and in that sense, is arbitrary and capricious" (Matter of Williams v City of New York, 64 NY2d 800, 802 [1985]). Here, it is undisputed that petitioner was on duty and working as a police officer when the alleged conduct occurred (see generally Riviello v Waldron, 47 NY2d 297, 304-305 [1979]).
We respectfully disagree with the view of our dissenting colleagues that a 30-second-long video recording of a portion of the incident, considered in conjunction with the indictment, provides a factual basis for respondent's implicit determination that petitioner was not acting within the scope of his employment and duties as a police officer. First, it is well settled that "[a]n indictment is a mere accusation and raises no presumption of guilt" (People v Miller, 91 NY2d 372, 380 [1998]; see Republic Pension Servs. v Cononico, 278 AD2d 470, 472 [2d Dept 2000]; see also In re Oliver, 333 US 257, 265 [1948]). Thus, the filing of an indictment against petitioner does not provide a factual basis to support the denial of a defense to petitioner in the civil action. Second, the video recording captured only part of the encounter between petitioner and the complainant, and did not capture the beginning or the end of the encounter. As a result, the recorded images of petitioner striking the complainant in the area of his legs and feet with a baton are unaccompanied by contextual factual information that would be essential to support a [*2]determination that petitioner's actions fell outside the scope of his employment and duties as a police officer. Notably, the brief video clip shows a loud and chaotic intersection with a heavy police presence, and petitioner appeared to be dressed in police uniform and wearing a jacket with the word "POLICE" printed in bold letters. Three of the officers in the video appeared to be carrying batons, like petitioner, and one other officer appeared to have been engaged in a physical struggle with a civilian on the sidewalk. That struggle appeared to continue into the roadway before the other officer and the civilian disengaged, at which point the camera panned over to a parking lot where petitioner was already engaged with the complainant.
Although it is well settled that an employee's conduct does not fall within the scope of his or her employment where his or her actions are taken for wholly personal reasons not related to the employee's job (see Beauchamp v City of New York, 3 AD3d 465, 466 [2d Dept 2004]; Schilt v New York City Tr. Auth., 304 AD2d 189, 194 [1st Dept 2003]), we conclude that the video recording does not establish that petitioner's actions were taken for wholly personal reasons unrelated to his job as a police officer. Absent sufficient factual support upon which to make that determination, we conclude that respondent's denial of petitioner's request for a defense in the civil action was arbitrary and capricious (see generally Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758 [1991]; Williams, 64 NY2d at 802; Matter of Taft v Village of Newark Planning Bd., 74 AD3d 1840, 1841 [4th Dept 2010]).
All concur except Dejoseph and Nemoyer, JJ., who dissent and vote to reverse in accordance with the following memorandum: We respectfully dissent and vote to reverse the judgment and grant respondent's motion to dismiss the petition.
Municipalities must defend and indemnify police officers for torts committed "within the scope of [their] employment" (General Municipal Law § 50-j [1]), which the law defines as the "immediate and actual performance of a public duty . . . for the benefit of the citizens of the community" (§ 50-j [2]). In the City of Buffalo, the Corporation Counsel determines in the first instance whether any particular tort was committed within the scope of a police officer's employment such that he or she receives a taxpayer-funded defense (see Buffalo City Code § 35-28; Matter of Salino v Cimino, 1 NY3d 166, 172 n 4 [2003]). The Corporation Counsel's determination will be upheld so long as, insofar as relevant here, it is not arbitrary and capricious (see Salino, 1 NY3d at 172; Matter of Williams v City of New York, 64 NY2d 800, 802 [1985]). Notably, the Court of Appeals has specifically rejected the notion that the Corporation Counsel's determination is controlled by the language of the civil complaint against which a taxpayer-funded defense is sought (see Salino, 1 NY3d at 172). Thus, the mere fact that a plaintiff accuses an officer of violating his or her rights under color of law does not, by itself, entitle the officer to a taxpayer-funded defense against those allegations.
So far, we are all in accord. We part company with the majority, however, in its application of those principles to the facts of this case. The majority holds that the Corporation Counsel acted arbitrarily and capriciously in determining that petitioner was not acting within the scope of his employment during the imbroglio that gave rise to the underlying civil lawsuit. But we say precisely the opposite. The imbroglio was captured on videotape, and it shows petitioner, armed with a baton, violently striking a prone and unarmed man for no apparent reason. As a result of this conduct, petitioner was charged criminally in federal court and sued civilly in Supreme Court. The Corporation Counsel took all three pieces of information — video, criminal indictment, and civil complaint — into account in making the challenged determination. Under these circumstances, we cannot say that the Corporation Counsel's determination to withhold a taxpayer-funded defense from petitioner was arbitrary or capricious in any sense of the term, i.e., that it was "taken without sound basis in reason or regard to the facts" (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]; see e.g. Matter of Riehle v County of Cattaraugus, 17 AD3d 1029, 1029-1030 [4th Dept 2005]; Matter of Bolusi v City of New York, 249 AD2d 134, 134 [1st Dept 1998]). In fact, we suspect that the average citizen would be surprised to learn that the sort of conduct captured on videotape here constitutes, as a matter of law, a "public duty performed . . . for the benefit of the citizens of the community" (General Municipal Law § 50-j [2]).
The majority articulates four rationales for its contrary determination, but none withstands scrutiny. First, the majority invokes the time-honored rule that "[a]n indictment is a mere accusation and raises no presumption of guilt" (People v Miller, 91 NY2d 372, 380 [1998] [internal quotation marks omitted]). This is of course true, and we have no quarrel with the [*3]majority's conclusion that the Corporation Counsel may not automatically withhold a taxpayer-funded defense in a civil suit simply because the officer was indicted in connection with the same incident. But that is not what occurred here. Rather, the Corporation Counsel "went to the videotape" and determined for himself that petitioner was not acting within the scope of his employment during the underlying incident. This is the very determination that the Buffalo City Code commits to the sound discretion of the Corporation Counsel. Indeed, if the Corporation Counsel cannot withhold a taxpayer-funded defense when a police officer is caught red-handed assaulting a citizen, then we cannot imagine any circumstances in which he or she could validly exercise the discretion conferred by law to decline to defend a police officer at taxpayer expense — a discretion, we might add, that has been consistently vindicated by the Court of Appeals (see Salino, 1 NY3d at 171-172; Williams, 64 NY2d at 801-802).
Second, the majority claims that "the video recording captured only part of the encounter between petitioner and the complainant, and [is] . . . unaccompanied by contextual factual information that would be essential to support a determination that petitioner's actions fell outside the scope of his employment and duties as a police officer." We disagree with the majority's characterization of the video; it shows enough of the encounter to demonstrate, persuasively to our mind, that petitioner was not acting out of any immediate fear for his life or his safety or out of any need to subdue the complainant, who was lying prone on his back during the encounter. Indeed, the mind struggles to even hypothesize an off-camera event that could have justified petitioner's conduct. But ultimately, our conflicting interpretations of the videotape are beside the point, for they demonstrate — at most — that reasonable people could disagree about what is depicted thereon. And that is simply an insufficient predicate for striking down an administrative determination as arbitrary and capricious; quite the opposite, it is well established that administrative action "may not be characterized as arbitrary and capricious" so long as "[r]easonable [people] might differ as to the wisdom of such a determination" (Matter of Sinacore v New York State Liq. Auth., 21 NY2d 379, 384 [1968] [emphasis added]).
Third, the majority emphasizes that "the video recording does not establish that petitioner's actions were taken for wholly personal reasons unrelated to his job as a police officer." Perhaps so, but that is merely one way that an officer can step outside the scope of his duties within the meaning of General Municipal Law § 50-j (2). Stated conversely, the fact that petitioner might not have been acting for "wholly personal reasons" does not demonstrate that he was acting within the scope of his duties for purposes of section 50-j (2); it establishes only that he was not acting outside the scope of his duties by virtue of wholly personal conduct. None of the cases upon which the majority relies for this point holds that an officer is necessarily acting within the scope of his duties so long as he is not acting for wholly personal reasons.
Finally, and most importantly, the majority notes that it is "undisputed that petitioner was on duty and working as a police officer when the alleged conduct occurred." As a factual matter, true enough. But as a legal matter, the majority's observation demarcates only the beginning, not the end, of the scope-of-duty analysis. As the Second Department recently held, not every act undertaken by an on-duty officer constitutes the " proper' " performance of his or her duties (Matter of Lemma v Nassau County Police Officer Indem. Bd., 147 AD3d 760, 762 [2d Dept 2017], lv granted 29 NY3d 907 [2017]). By parity of reasoning, not every act undertaken by an on-duty officer constitutes an "immediate and actual performance of a public duty . . . for the benefit of the citizens of the community" (General Municipal Law § 50-j [2]). Such is the case here — or, at the very minimum, the Corporation Counsel rationally could have so determined. We respectfully dissent.
Entered: June 8, 2018
Mark W. Bennett
Clerk of the Court